STATE OF CONNECTICUT *v.* JOSEPH WILCHINSKI
(SC 15598)

Callahan, C. J., and Berdon, Norcott, Katz and McDonald, Js.

Argued May 30—officially released July 29, 1997

*Hubert J. Santos*, with whom were *Hope C. Seeley* and *Patrick Bristol*, for the appellant (defendant).

*Judith Rossi*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, *Cynthia Baer*, supervisory assistant state's attorney, and *Edward Wilson*, former assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. This appeal concerns the constitutionality of General Statutes § 53a-217a,[1] which provides that an owner of a firearm is criminally negligent if he violates the provisions of General Statutes § 29-37i[2] and, as a result of that violation, a person under the age of sixteen years obtains the firearm and causes injury or death to himself or any other person. The defendant, Joseph Wilchinski, a police officer employed by Central Connecticut State University, asserts that § 53a-217a is unconstitutionally vague, both on its face and as applied to his conduct. He further claims that § 53a-217a is defective because it impermissibly criminalizes mere negligence, fails to require that the defendant proximately cause the underlying injury or death and fails to incorporate the accessory liability standard of General

[1] General Statutes § 53a-217a provides: "Criminally negligent storage of a firearm: Class D felony. (a) A person is guilty of criminally negligent storage of a firearm when he violates the provisions of section 29-37i and a minor obtains the firearm and causes the injury or death of himself or any other person. For the purposes of this section, 'minor' means any person under the age of sixteen years.

"(b) The provisions of this section shall not apply if the minor obtains the firearm as a result of an unlawful entry to any premises of any person.

"(c) Criminally negligent storage of a firearm is a class D felony."

[2] General Statutes § 29-37i provides in pertinent part: "Responsibilities re storage of loaded firearms with respect to minors. No person shall store or keep any loaded firearm on any premises under his control if he knows or reasonably should know that a minor is likely to gain access to the firearm without the permission of the parent or guardian of the minor unless such person (1) keeps the firearm in a securely locked box or other container or in a location which a reasonable person would believe to be secure . . . . For the purposes of this section, 'minor' means any person under the age of sixteen years."

Statutes § 53a-8.[3] We are not persuaded by the defendant's arguments and, therefore, we affirm the judgment of the trial court.

The parties have stipulated to the following facts. On July 5, 1993, the defendant's fourteen and thirteen year old sons[4] and a friend, fifteen year old Kyle Hirons, were watching television in the defendant's bedroom.[5] The fourteen year old boy removed the defendant's loaded Ruger .357 Security Six Revolver from underneath a dresser. The gun was stored in a snapped holster inside a zippered leather case. After removing six bullets from the gun, the defendant's fourteen year old son and Hirons took turns pulling the trigger. The fourteen year old boy then reloaded the gun with four bullets and, while holding the hammer back with his thumb, pulled the trigger. The hammer slipped from under his thumb, causing the gun to fire. Hirons was struck in the face by the bullet and died two days later.

The defendant was charged in an information with one count of criminally negligent storage of a firearm in violation of § 53a-217a. On February 7, 1995, the

---

[3] General Statutes § 53a-8 provides: "Criminal liability for acts of another. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.

"(b) A person who sells, delivers or provides any firearm, as defined in subdivision (19) of section 53a-3, to another person to engage in conduct which constitutes an offense knowing or under circumstances in which he should know that such other person intends to use such firearm in such conduct shall be criminally liable for such conduct and shall be prosecuted and punished as if he were the principal offender."

[4] The names of the defendant's sons were not included in the stipulated facts and are not in the file submitted to this court.

[5] In its memorandum of decision on the defendant's motion to dismiss, the trial court found the following additional facts: "[I]t was a common practice for the boys to watch television in the master bedroom which [was] described as a 'flop room.' " We need not address the defendant's objection to these additional facts because they do not factor into our analysis.

defendant moved to dismiss the charges, claiming, inter alia, that § 53a-217a was unconstitutional. On January 26, 1996, the trial court, *Dunnell, J.*, denied the defendant's motion to dismiss. The defendant subsequently filed motions for reconsideration and articulation, which the trial court also denied. Pursuant to General Statutes § 54-94a and Practice Book § 4003,[6] the defen-

[6] General Statutes § 54-94a provides: "Conditional nolo contendere plea. Appeal of denial of motion to suppress or dismiss. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

Practice Book § 4003 provides: "Appeals of Rulings on Motions to Dismiss or Suppress Following Judgments Entered Upon Conditional Pleas of Nolo Contendere

"(a) When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement, or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this subsection shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution. The court shall not accept a nolo contendere plea pursuant to this subsection where the denial of the motion to suppress would not have a significant impact upon the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere plea where the record available for review of the denial of the motion to suppress or motion to dismiss is inadequate for appellate review of the court's determination thereof.

"(b) With the approval of the court, after a hearing to consider any objections thereto, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any motion made prior to the close of evidence, which motion must be specified in such written reservation.

dant thereafter entered a plea of nolo contendere with a reservation of right to appeal. He was sentenced to five years imprisonment, suspended, with three years probation. The defendant appealed from the judgment of the trial court to the Appellate Court. Upon the defendant's motion, we transferred the appeal to this court pursuant to Practice Book § 4024.

On appeal, the defendant argues that § 53a-217a is unconstitutional because: (1) it is facially vague in that (a) it inhibits constitutionally protected conduct and (b) it has no core meaning; (2) it is vague as applied to the defendant's conduct; (3) it does not require a criminal mental element (mens rea); (4) it imposes a criminal penalty dependent upon the actions of another but fails to incorporate accessory liability as defined in § 53a-8; and (5) it imposes criminal liability without requiring that the defendant's conduct be the proximate cause of the victim's injury or death. We conclude that § 53a-217a is not unconstitutionally vague and that the defendant's actions come well within the statute's core meaning. Furthermore, we are not persuaded by the defendant's arguments that § 53a-217a is defective as to its terms and requirements. Accordingly, we affirm the judgment of the trial court.

I

The defendant first contends that § 53a-217a is unconstitutionally vague and, therefore, offends the due pro-

If the defendant prevails on appeal, the judgment shall be set aside and the defendant shall be allowed to withdraw the conditional plea of guilty or nolo contendere after the case has been remanded to the trial court. A plea of guilty or nolo contendere under this subsection shall not constitute a waiver of nonjurisdictional defects in the criminal prosecution. The court shall not accept a plea of guilty or nolo contendere pursuant to this subsection where the adverse determination of the specified motion would not have a significant impact on the disposition of the case in the trial court. The court shall also decline to accept such a nolo contendere or guilty plea where the record available for review of the ruling upon the specified motion is inadequate for appellate review of the court's determination thereof."

cess requirements of both the federal and state constitutions.[7] Specifically, he argues that the statute is vague on its face and as applied to his conduct. Although the defendant concedes that we have never engaged in a facial vagueness analysis outside the context of the first amendment, he nevertheless argues that because § 53a-217a implicates his fundamental right to bear arms under the state constitution,[8] certain language contained in both state and federal decisions supports a facial analysis.[9] In response, the state asserts that neither federal nor state precedent clearly supports the application of a facial vagueness analysis outside the context of a first amendment claim and that, even if this court were to extend the application of the void for vagueness doctrine, a facial vagueness analysis is inappropriate in this case because the defendant's conduct falls within the core meaning of the statute. We conduct our review of § 53a-217a mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the

[7] We do not address the defendant's state constitutional due process claim because he failed to raise the issue in his initial brief to this court, but, rather, raised it for the first time in his reply brief. "It is a well established principle that arguments cannot be raised for the first time in a reply brief." *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 593 n.26, 657 A.2d 212 (1995). Moreover, the defendant appears to have *conceded* in his initial brief, albeit in a footnote, that our due process analysis would be the same under either the Connecticut or federal constitution, because " '[t]he due process provisions of the federal and Connecticut constitutions have a common meaning . . . .' *State* v. *Pickering*, 180 Conn. 54, 55 n.1, 428 A.2d 322 (1980)."

[8] The constitution of Connecticut, article first, § 15, provides: "Every citizen has a right to bear arms in defense of himself and the state."

[9] See, e.g., *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982); *State* v. *Payne*, 240 Conn. 766, 777, 695 A.2d 525 (1997) (implying that facial challenge is appropriate when fundamental right is implicated); *State* v. *Pickering*, 180 Conn. 54, 63–64, 428 A.2d 322 (1980) (because no constitutionally protected conduct was implicated, court analyzed whether General Statutes § 53-21 was vague as applied to defendant).

heavy burden of proving the statute unconstitutional beyond a reasonable doubt." *Beccia* v. *Waterbury*, 192 Conn. 127, 133, 470 A.2d 1202 (1984); see also *In re Ralph M.*, 211 Conn. 289, 318, 559 A.2d 179 (1989). We conclude that the respondent has failed to meet that burden.

Assuming, without deciding, that § 53a-217a implicates a fundamental constitutional right, and further assuming that we would be willing to engage in a facial vagueness analysis outside the context of the first amendment, we need not do so in this case. Our analysis terminates once we determine that the statute, strictly construed, is not vague as applied to the defendant's conduct. See *Parker* v. *Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974) ("[o]ne to whose conduct a statute applies may not successfully challenge it for vagueness"); *Benjamin* v. *Bailey*, 234 Conn. 455, 484, 662 A.2d 1226 (1995) ("To prevail on [a] vagueness claim, the plaintiffs . . . must demonstrate that the statute has no core meaning. Put another way, a determination that the statute is not vague with respect to at least one application will defeat [a] facial challenge.").[10]

---

[10] In *Parker* v. *Levy*, supra, 417 U.S. 755–57, the United States Supreme Court discussed the relevance of constitutionally protected conduct to the void for vagueness doctrine. The court stated that statutes implicating constitutionally protected conduct are subject to a stricter vagueness test in the sense that the legislature is generally allowed less flexibility in defining criminal conduct. This is particularly true for statutes affecting free speech. In subsequent decisions, the court has reiterated the principle that statutes affecting fundamental constitutional rights require a higher degree of specificity. See, e.g., *Kolender* v. *Lawson*, 461 U.S. 352, 358, 358–59 n.8, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983) (criminal statutes reaching substantial amount of constitutionally protected conduct require higher degree of certainty); *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) (stricter vagueness test applies where statute interferes with right of free speech or of association); see also *Colautti* v. *Franklin*, 439 U.S. 379, 394–401, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979). Because we are assuming for the purposes of this case that § 53a-217a implicates a fundamental constitutional right, we construe it strictly, but nevertheless conclude that it has a core meaning sufficiently clear to satisfy due process.

A

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender* v. *Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); see also *State* v. *DeFrancesco*, 235 Conn. 426, 443, 668 A.2d 348 (1995); *State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994). Where, as in the present case, the statute addresses noncommercial behavior, "as a general rule [the defendant's actions are] not mapped out in advance on the basis of statutory language. In such cases, perhaps the most meaningful aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement." *Smith* v. *Goguen*, 415 U.S. 566, 574, 94 S. Ct. 1242, 39 L. Ed. 2d 605 (1974); see also *Kolender* v. *Lawson*, supra, 357–58; *Papachristou* v. *Jacksonville*, 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972). "This appears to be especially true where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights." *Colautti* v. *Franklin*, 439 U.S.

We further note that the court in *Parker* held that one whose conduct is clearly proscribed by such a statute may not "attack it because the language would not give similar fair warning with respect to other conduct which might be within its broad and literal ambit." *Parker* v. *Levy*, supra, 417 U.S. 756–57. We recognize that the Supreme Court has since stated in dictum that a criminal statute may be unconstitutionally vague even when it may have some valid application. See *Kolender* v. *Lawson*, supra, 461 U.S. 358, 358–59 n.8. In this case, although the defendant claims that § 53a-217a is unconstitutionally vague because it infringes on a constitutionally protected right and because it has no core meaning, he does not claim in the alternative that even if it does have a core meaning and his conduct falls within that core meaning, he may nevertheless challenge the constitutionality of the statute as applied to others. Therefore, we need not address the third party standing implications of the void for vagueness doctrine.

379, 391, 99 S. Ct. 675, 58 L. Ed. 2d 596 (1979); see also *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) (stricter vagueness test applies where statute interferes with right of free speech or of association); *Parker* v. *Levy*, supra, 417 U.S. 755–57 (statutes affecting free speech require higher degree of specificity).

Because perfect precision is neither possible nor required, however, the doctrine does not mandate the invalidation of all imprecisely drafted statutes. *Rose* v. *Locke*, 423 U.S. 48, 49, 96 S. Ct. 243, 46 L. Ed. 2d 185 (1975); *Grayned* v. *Rockford*, 408 U.S. 104, 110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) ("condemned to the use of words, we can never expect mathematical certainty from our language"); see also *State* v. *Eason*, 192 Conn. 37, 47, 470 A.2d 688 (1984), overruled in part on other grounds, *Paulsen* v. *Manson*, 203 Conn. 484, 525 A.2d 1315 (1987). "While some ambiguous statutes are the result of poor draftsmanship, it is apparent that in many instances the uncertainty is merely attributable to a desire not to nullify the purpose of the legislation by the use of specific terms which would afford loopholes through which many could escape." W. LaFave & A. Scott, Criminal Law (1972) § 11, pp. 84–85. Unconstitutional vagueness must, therefore, be contrasted with mere ambiguity, which the court has within its power to correct through a narrow interpretation of the statute. 1 W. LaFave & A. Scott, Substantive Criminal Law (1986) § 2.3, p. 127. Courts have both the power and the duty to interpret statutes so as to preserve their constitutionality when such an interpretation is possible. *Moscone* v. *Manson*, 185 Conn. 124, 128, 440 A.2d 848 (1981).

In order to be constitutional, the statute must contain some core meaning within which the defendant's actions clearly fall. "Although it is not likely that a

criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle* v. *United States*, 283 U.S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816 (1931). A statute that is completely lacking in any core meaning or standard by which the public and law enforcement officers may guide their actions is " 'perfectly vague' " and therefore void. L. Tribe, American Constitutional Law (2d Ed. 1988) § 12-32, p. 1036.

## B

The defendant argues that § 53a-217a lacks a core meaning because its language is not susceptible of a consistent interpretation, either by persons attempting to comply with the statute, by police officers attempting to enforce it, or by judges attempting to fashion appropriate jury instructions. Specifically, the defendant claims that the phrases, "a securely locked box or other container" and "in a location which a reasonable person would believe to be secure," found in § 29-37i (1) and incorporated by reference into § 53a-217a, are unconstitutionally vague. We are not persuaded. The text and legislative history of § 53a-217a clearly indicate that gun owners must use age appropriate physical impediments to prevent children from gaining access to and misusing guns. The statute therefore has a core meaning that is sufficiently clear to satisfy the due process requirements of the state and federal constitutions.

The resolution of this issue requires us to analyze the language and purpose of § 53a-217a, and that of § 29-37i as incorporated by § 53a-217a. "The process of statutory interpretation involves a reasoned search for the intention of the legislature. *Frillici* v. *Westport*, 231

Conn. 418, 431, 650 A.2d 557 (1994). In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Id.; *Carpenteri-Waddington, Inc.* v. *Commissioner of Revenue Services*, 231 Conn. 355, 362, 650 A.2d 147 (1994); *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755–56, 601 A.2d 1005 (1992)." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 431–32, 692 A.2d 742 (1997). Because we are assuming for the purposes of this case that § 53a-217a implicates a fundamental constitutional right, we will construe it strictly, demanding a higher degree of specificity and clarity than would otherwise be required. *Kolender* v. *Lawson*, supra, 461 U.S. 358; *Village of Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, supra, 455 U.S. 498–99; *Colautti* v. *Franklin*, supra, 439 U.S. 391.

Sections 29-37i and 53a-217a were enacted at the same time, as part of the same public act. Public Acts 1990, No. 90-144, §§ 1 and 2 (P.A. 90-144). That act, commonly known as the "Kids and Guns Bill," was the legislature's response to the growing public concern over accidental shootings involving children occurring in the homes of gun owners.[11] Public Act 90-144, § 1 (currently codified at § 29-37i), sets forth the standard

___

[11] One supporter of P.A. 90-144 stated that "[t]here are almost 160 million privately owned firearms in homes in the United States today. There are an average of twenty-five children who die yearly in Connecticut due to firearms." 33 S. Proc., Pt. 5, 1990 Sess., p. 1632, remarks of Senator Marie A. Herbst.

of care required for safe storage of loaded firearms when the gun owner "knows or reasonably should know that a minor is likely to gain access to the firearm . . . ." Public Act 90-144, § 2 (currently codified at § 53a-217a), declares it a class D felony when criminally negligent conduct violative of P.A. 90-144, § 1, allows a minor to gain access to an improperly stored firearm and to injure or kill himself or another person.[12]

Section 29-37i does not mandate any particular method of storage.[13] The question, therefore, is whether the phrases in that statute, "securely locked box or other container" and "in a location which a reasonable person would believe to be secure," provide sufficient guidance to gun owners, police officers and judges so as to defeat a vagueness claim.

The defendant first argues that the language of the statute is vague because it provides no direction as to the meaning of the terms "container" and "secure." The state argues that these terms are given meaningful substance by their context within the framework of the statute as a whole, by the purpose of the statute, and by their common meaning. We agree with the state.

In construing the meaning of terms within a statute we look to General Statutes § 1-1, entitled "[w]ords and phrases," which provides in subsection (a) that "[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved

[12] Public Act 90-144, § 3 (currently codified at General Statutes § 29-37b), requires firearms dealers to provide, at the time of each firearm purchase, trigger locks or other such locking devices and a large type, written warning that " 'unlawful storage of a loaded firearm may result in imprisonment or fine.' "

[14] We note that a reference to trigger locks was omitted from § 29-37i because such devices may be inappropriate for loaded guns. 33 H.R. Proc., Pt. 21, 1990 Sess., pp. 7474–75. remarks of Representative Robert D. Godfrey. This further supports our conclusion herein that what is reasonable must be determined on a case-by-case basis, because a safeguard that may be appropriate in one case may be inappropriate in another.

usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." In addition, " '[r]eferences to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain the statute's meaning . . . .' " *State* v. *Eason*, supra, 192 Conn. 46; see *Rose* v. *Locke*, supra, 423 U.S. 50; *State* v. *Pickering*, supra, 180 Conn. 57. Due process does not require statutes to provide a laundry list of prohibited conduct. "[L]aws may be general in nature so as to include a wide range of prohibited conduct. The constitution requires no more than a reasonable degree of certainty." *State* v. *Chetcuti*, 173 Conn. 165, 167, 377 A.2d 263 (1977).

Section 29-37i (1) requires the firearm to be kept "in a securely locked box or other container . . . ." In this context "locked" modifies both "box" and "container." The defendant claims that the term "container" may be construed to mean nothing more than a "receptacle." Viewing the term in context, however, it is clear that "container" is offered as a generic alternative to "box" and that the statute did not intend to allow unlocked containers as alternatives to locked boxes. As the trial court stated in its memorandum denying the defendant's motion to dismiss, such an interpretation would allow guns to be stored in paper bags—clearly an absurd result. Indeed, this would offend the principle "that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results." (Internal quotation marks omitted.) *State* v. *DeFrancesco*, supra, 235 Conn. 437.

The defendant further contends that the term "secure" as used in the statute is too ambiguous to satisfy the requirements of due process. In addition to the definition noted by the defendant ("to relieve from exposure to danger"), secure may also be defined as

to "hold fast," to "tie down," to "put beyond hazard of losing," or "inviolable." Webster's Third New International Dictionary (1963). The only logical interpretation of the word "secure" in § 29-37i is one that focuses both on preventing minors from gaining access to guns and on preventing them from being able to misuse the weapon.[14] The definition offered by the defendant focuses more broadly on general harm, and is therefore inapposite.

The legislative history of § 29-37i further indicates that, although no specific storage method is required, some physical impediment to access is mandatory. See, e.g., 33 S. Proc., Pt. 5, 1990 Sess., pp. 1642, 1644, remarks of Senator George L. Gunther (noting that gun owner will need to "unlock either the box or the drawer and unlock the weapon" and referring to locking devices and keys); 33 H.R. Proc., Pt. 21, 1990 Sess., p. 7464, remarks of Representative Robert D. Godfrey ("You can put it in a safe. You can disassemble it."); id., p. 7479, remarks of Representative Andrew M. Norton (referring to locked closets, locked trunks and gun racks); id., p. 7472, remarks of Representative Robert G. Jaekle (referring to lock boxes, gun locking devices and trigger guards). Therefore, although the propriety of a particular storage method must be determined on a case-by-case basis, the text and legislative history of

---

[14] General Statutes § 29-37b, which was enacted by P.A. 90-144, § 3, provides a clear signpost as to the legislature's intent regarding what "secure" should mean with respect to a firearm. Section 29-37b (a) requires firearms dealers to provide: "(1) a trigger lock, gun lock or gun locking device appropriate for such firearm, and (2) a written warning which shall state in block letters not less than one inch in height: 'UNLAWFUL STORAGE OF A LOADED FIREARM MAY RESULT IN IMPRISONMENT OR FINE.'" The relevance of that section to the present case is limited to its effect on the interpretation of the word "secure" in § 29-37i as incorporated into § 53a-217a. Clearly the legislative intent was to make it extremely difficult for someone who is not the owner of the gun to fire it. We therefore read the terminology focusing on access and control of firearms as colored by this overriding purpose.

§ 29-37i nevertheless provide sufficiently clear guidance as to the type of storage the legislature had in mind.

The defendant next argues that the inclusion of a reasonable person standard in § 29-37i renders the statute impermissibly vague. We disagree. There is no support for the contention that the use of a reasonableness standard in a penal statute renders it presumptively vague. As the state has made clear, both in its brief and at oral argument, the penal code is replete with references to reasonable conduct. See, e.g., General Statutes §§ 53a-18,[15]

---

[15] General Statutes § 53a-18 provides: "Use of reasonable physical force or deadly physical force generally. The use of physical force upon another person which would otherwise constitute an offense is justifiable and not criminal under any of the following circumstances:

"(1) A parent, guardian or other person entrusted with the care and supervision of a minor or an incompetent person, except a person entrusted with the care and supervision of a minor for school purposes as described in subdivision (6) of this section, may use *reasonable* physical force upon such minor or incompetent person when and to the extent that he *reasonably* believes such to be necessary to maintain discipline or to promote the welfare of such minor or incompetent person.

"(2) An authorized official of a correctional institution or facility may, in order to maintain order and discipline, use such physical force as is *reasonable* and authorized by the rules and regulations of the Department of Correction.

"(3) A person responsible for the maintenance of order in a common carrier of passengers, or a person acting under his direction, may use *reasonable* physical force when and to the extent that he *reasonably* believes such to be necessary to maintain order, but he may use deadly physical force only when he *reasonably* believes such to be necessary to prevent death or serious physical injury.

"(4) A person acting under a *reasonable* belief that another person is about to commit suicide or to inflict serious physical injury upon himself may use *reasonable* physical force upon such person to the extent that he *reasonably* believes such to be necessary to thwart such result.

"(5) A duly licensed physician or psychologist, or a person acting under his direction, may use *reasonable* physical force for the purpose of administering a recognized form of treatment which he *reasonably* believes to be adapted to promoting the physical or mental health of the patient, provided the treatment (A) is administered with the consent of the patient or, if the patient is a minor or an incompetent person, with the consent of his parent, guardian or other person entrusted with his care and supervision, or (B) is administered in an emergency when the physician or psychologist reason-

53a-19[16] and 53a-20.[17] Moreover, the definition of criminal negligence itself refers to gross deviations "from the standard of care that a *reasonable* person would observe in the situation . . . ." (Emphasis added.) General Statutes § 53a-3 (14). Finally, the reasonableness standard is a well established guidepost of American jurisprudence. See *Nash* v. *United States*, 229 U.S. 373, 377, 33 S. Ct. 780, 57 L. Ed. 1232 (1913) ("the law is full of instances

---

ably believes that no one competent to consent can be consulted and that a *reasonable* person, wishing to safeguard the welfare of the patient, would consent.

"(6) A teacher or other person entrusted with the care and supervision of a minor for school purposes may use *reasonable* physical force upon such minor when and to the extent he *reasonably* believes such to be necessary to (A) protect himself or others from immediate physical injury, (B) obtain possession of a dangerous instrument or controlled substance, as defined in subdivision (9) of section 21a-240, upon or within the control of such minor, (C) protect property from physical damage or (D) restrain such minor or remove such minor to another area, to maintain order." (Emphasis added.)

[16] General Statutes § 53a-19 provides in pertinent part: "Use of physical force in defense of person. (a) Except as provided in subsections (b) and (c) of this section, a person is justified in using *reasonable* physical force upon another person to defend himself or a third person from what he *reasonably* believes to be the use or imminent use of physical force, and he may use such degree of force which he *reasonably* believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor *reasonably* believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm. . . ." (Emphasis added.)

[17] General Statutes § 53a-20 provides: "Use of physical force in defense of premises. A person in possession or control of premises, or a person who is licensed or privileged to be in or upon such premises, is justified in using *reasonable* physical force upon another person when and to the extent that he *reasonably* believes such to be necessary to prevent or terminate the commission or attempted commission of a criminal trespass by such other person in or upon such premises; but he may use deadly physical force under such circumstances only (1) in defense of a person as prescribed in section 53a-19, or (2) when he *reasonably* believes such to be necessary to prevent an attempt by the trespasser to commit arson or any crime of violence, or (3) to the extent that he *reasonably* believes such to be necessary to prevent or terminate an unlawful entry by force into his dwelling as defined in section 53a-100, or place of work, and for the sole purpose of such prevention or termination." (Emphasis added.)

where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree"); *State* v. *Linares*, 232 Conn. 345, 356, 655 A.2d 737 (1995) (use of term "unreasonable" in General Statutes § 2-1d does not render statute unconstitutionally vague and does not give law enforcement officials unfettered discretion); W. LaFave & A. Scott, Criminal Law, supra, § 11, pp. 84–85 (noting "frequent occasions when a jury is asked to determine whether the defendant acted 'reasonably' ").

The most appropriate and efficient means to achieve the goal of restricting access to a loaded firearm depends on facts uniquely within the knowledge of the individual gun owner. The most obvious variables include the ages of children in the household, the physical layout of the home, and the availability of locked safes or closets. A high shelf in a closet may be a secure location when the only child in the household is a toddler, but when older children are present in the home, it may be necessary to use trigger locks and a locked container. Therefore, while the individual gun owner may reasonably determine what he or she must do to "secure" a weapon and a jury that is privy to the relevant facts may do so as well, it would be virtually impossible for the legislature to explicitly define what "secure" means for every situation. See *Rose* v. *Locke*, supra, 423 U.S. 49; W. LaFave & A. Scott, Criminal Law, supra, § 11, pp. 84–85. It is appropriate and necessary to leave this determination to the finder of fact.

In the present case, the defendant's children were teenagers. The defendant's loaded gun was kept in a zippered case, without a trigger lock, on the floor underneath a dresser, in a room that the defendant knew was often used by his teenage children and their friends. A fact finder reasonably could find that the defendant did not use an appropriate physical impediment to restrict his children's access to the gun and, therefore, reason-

ably could find that the defendant stored the gun in a manner grossly deviating from the standard of care set out in § 29-37i. Accordingly, we conclude that § 53a-217a is not vague as applied to the defendant's conduct. See *State* v. *Eason,* supra, 192 Conn. 48. A law that is not vague as applied to the defendant's conduct is not vague on its face. *Benjamin* v. *Bailey,* supra, 234 Conn. 484; see *State* v. *Linares,* supra, 232 Conn. 355 n.11. Because the defendant has not demonstrated that § 53a-217a is vague as applied to his own conduct, he cannot mount a facial challenge to the statute. *Parker* v. *Levy,* supra, 417 U.S. 755–57.

II

The defendant next claims that § 53a-217a is unconstitutional because it criminalizes merely negligent behavior by incorporating the civil standard of negligence set forth in § 29-37i. The state contends that § 53a-217a requires the trial court to instruct the jury that the requisite standard is criminal negligence. The defendant asserts, however, that although § 53a-217a is entitled "[c]riminally negligent storage of a firearm," the statutory language nevertheless defines criminal negligence as the violation of a civil standard of care and, consequently, a charge on criminal negligence would be improper. We agree with the state.

Despite the common-law presumption that criminal offenses require some degree of criminal intent; *Dennis* v. *United States,* 341 U.S. 494, 500, 71 S. Ct. 857, 95 L. Ed. 1137 (1951); this court has held that "the legislature may, if it so chooses, ignore the common-law concept that criminal acts require the coupling of the evil-meaning mind with the evil-doing hand and may define crimes which depend on no mental element, but consist only of forbidden acts or omissions." *State* v. *Husser,* 161 Conn. 513, 515, 290 A.2d 336 (1971). Indeed, General Statutes § 53a-5, which addresses the mental state

required for offenses in the penal code, implicitly permits the legislature to proscribe offenses that do not require a mens rea ("[w]hen the commission of an offense defined in this title, or some element of an offense, requires a particular mental state" [emphasis added]).[18] Therefore, the legislature could have made § 53a-217a a strict liability statute, punishing criminally any person who fails to store a firearm in the prescribed manner regardless of whether that person had any degree of criminal intent. We conclude, however, that the legislature, as evidenced by the title, text, and legislative history of § 53a-217a, decided, rather than to impose such strict liability, to require proof that the defendant acted with criminal rather than ordinary negligence.

The term "criminally negligent" appears in the title of § 53a-217a. "The title of legislation when it is acted upon by the legislature is significant and often a valuable aid to construction . . . ." (Citations omitted.) *Miller* v. *Board of Education*, 166 Conn. 189, 194, 348 A.2d 584 (1974); see also *Nickel Mine Brook Associates* v. *Joseph E. Sakal, P.C.*, 217 Conn. 361, 368, 585 A.2d 1210 (1991) (relying on title of General Statutes § 44-33 to interpret its provisions); *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.*, 142 Conn. 359, 370, 114 A.2d 535 (1955) (noting that title is significant though not conclusive evidence of legislative purpose). The term "criminally negligent" also appears in

---

[18] General Statutes § 53a-5 provides: "Criminal liability; mental state required. When the commission of an offense defined in this title, or some element of an offense, requires a particular mental state, such mental state is ordinarily designated in the statute defining the offense by use of the terms 'intentionally', 'knowingly', 'recklessly' or 'criminal negligence', or by use of terms, such as 'with intent to defraud' and 'knowing it to be false', describing a specific kind of intent or knowledge. When one and only one of such terms appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears."

the text of § 53a-217a. Although § 29-37i imposes a reasonableness standard, the definition of criminal negligence refers to gross deviations "from the standard of care that a reasonable person would observe in the situation." General Statutes § 53a-3 (14). Therefore, the defendant's reliance on § 29-37i to undermine the express language of § 53a-217a is misguided.

Moreover, it is clear from the legislative history, as reflected in the structure of P.A. 90-144, that § 29-37i defines a standard of care for the storage of loaded firearms and § 53a-217a punishes the criminally negligent violation of that standard of care. Although on occasion legislators used the term "negligent" when debating § 53a-217a,[19] those discussions that specifically concerned the degree of fault required by the statute indicated that something greater than simple negligence was required. See, e.g., 33 H.R. Proc., Pt. 22, 1990 Sess., p. 7501, remarks of Representative Eugene A. Migliaro, Jr. ("I think we have to show wilful neglect. . . . That's the individual that should be stopped."); id., p. 7543, remarks of Representative Richard D. Tulisano ("[f]ailure to store the firearm appropriately results in a criminal offense and I understand the criminal negligen[ce] part of it is the negligence is so great as to impute intent to the offender"); 33 H.R. Proc., Pt. 21, 1990 Sess., p. 7454, remarks of Representative Lawrence Anastasia (noting criminal negligence standard in relation to whether "owner of a firearm knows that a child under sixteen is likely to gain access to loaded firearm").

Furthermore, even if we were to hold that § 53a-217a impermissibly criminalizes civilly negligent conduct, "we may . . . add interpretive gloss to a challenged

---

[19] See, e.g., 33 H.R. Proc., Pt. 21, 1990 Sess., p. 7497, remarks of Representative Robert F. Frankel ("[w]e are talking about negligent supervision, and that is the causing factor").

statute in order to render it constitutional." *State* v. *Indrisano*, supra, 228 Conn. 805. "We have the authority to construe our own statutes." *State* v. *Gerardi*, 237 Conn. 348, 358, 677 A.2d 937 (1996). Furthermore, "where a statute permits two constructions, one valid and the other invalid as unconstitutional, the valid construction should be adopted . . . ." *Engle* v. *Personnel Appeal Board*, 175 Conn. 127, 134, 394 A.2d 731 (1978). Therefore, any textual defect in § 53a-217a may be cured by an instruction to the jury that the defendant can be found liable for criminally negligent conduct only as defined by the penal code. See *State* v. *Gerardi*, supra, 358–60. As we have noted, the state has recognized that § 53a-217a imposes a criminal negligence standard. Accordingly, we conclude that § 53a-217a requires the state to prove that the defendant acted with criminal negligence as defined in § 53a-3 (14), and that any instructions to the jury must reflect that standard.

## III

The defendant next claims that § 53a-217a impermissibly holds a gun owner criminally liable for the acts of another without requiring the state to prove that the owner was an accessory as defined by § 53a-8.[20] Specifically, the defendant claims that because a third party must act in order for § 53a-217a to apply, the statute silently invokes accessorial liability. In effect, the defendant attempts to graft the requirements of § 53a-8 onto § 53a-217a. We are not persuaded.

Although criminal liability under § 53a-217a does not attach unless and until a minor injures or kills himself or another person, the offense this section seeks to punish is not the resulting injury or death but, rather, is the improper storage of the weapon that led to the tragedy. See 33 H.R. Proc., Pt. 21, 1990 Sess., pp. 7475–76, remarks of Representative Robert G. Jaekle (noting

---

[20] See footnote 3 of this opinion.

that § 53a-217a addresses itself specifically to "failing to take the proper safeguards with [a] loaded gun"). The fact that a third party must act before the defendant may be criminally charged under § 53a-217a is merely a condition precedent.

Moreover, accessorial liability does not attach unless the defendant has the same degree of criminal intent required to commit the offense as the principal. "[T]o establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another the state must prove criminality of intent and community of unlawful purpose. It is not enough that the accused committed acts which may in fact have aided the committing of the criminal act." *State* v. *Teart*, 170 Conn. 332, 336, 365 A.2d 1200 (1976); see also *State* v. *Hicks*, 169 Conn. 581, 584–85, 363 A.2d 1081 (1975); *State* v. *Laffin*, 155 Conn. 531, 536, 235 A.2d 650 (1967). In this case, the state has not alleged that there was a "community of unlawful purpose"; *State* v. *Teart*, supra, 336; or that the defendant had the degree of criminal intent necessary to charge him with the shooting as an accessory. Therefore, § 53a-8 does not apply to this case and the state need not prove accessorial liability in order to sustain a conviction under § 53a-217a.

IV

The defendant's final argument is that § 53a-217a is unconstitutional because it does not require the improper storage of the firearm to be the proximate cause of the resulting injury or death. The defendant urges this court to find, as a matter of law, that the acts of his fourteen year old son constituted an efficient, intervening cause of Hirons' death. The state argues in response that the causation requirements of criminal negligence are met because the defendant's actions were a substantial factor in Hirons' death and because

the accident was a foreseeable result of those actions.[21] We agree with the state.

" 'Proximate cause' in the criminal law does not necessarily mean the last act of cause, or the act in point of time nearest to death. The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of death. . . . In many situations giving rise to criminal liability, the harm that results is unintended, yet is directly or indirectly caused by an act of the defendant. In such cases, where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible." (Citations omitted.) *State* v. *Spates*, 176 Conn. 227, 233–35, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979); see also *State* v. *Wassil*, 233 Conn. 174, 181–82, 658 A.2d 548 (1995); *State* v. *Leroy*, 232 Conn. 1, 9, 653 A.2d 161 (1995).

The defendant correctly states that no penalty attaches under § 53a-217a unless a minor injures or kills himself or another with an improperly stored gun. The defendant is incorrect, however, in stating that the acts of the third party relieve him of criminal liability. The crime for which the defendant is being punished is "failing to take the proper safeguards with [a] loaded gun." 33 H.R. Proc., Pt. 21, 1990 Sess., p. 7475–76, remarks of Representative Jaekle. By enacting § 53a-217a, the legislature intended to hold an individual crim-

---

[21] The state also claims that this claim is unpreserved because the defendant failed to raise it in the trial court, and that the issue may be reviewed, if at all, only as a claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Our review of the record, however, reveals that the defendant raised the issue of efficient intervening cause in his amended motion to dismiss and in his second supplemental memorandum in support of his motion to dismiss. The issue is therefore preserved for appellate review.

inally liable when that individual's criminally negligent storage of a loaded firearm created an opportunity for a minor to obtain and use the firearm, thereby causing a foreseeable injury. Although the death or injury required by the statute results from the act of a third party, that act is the foreseeable result of the risk created by the defendant's failure to store his gun properly. Because the act of the defendant's son was precisely the harm the legislature sought to prevent when it enacted § 53a-217a, that foreseeable act cannot be invoked by the defendant as an efficient intervening cause of Hirons' death.

Furthermore, the cases cited by the defendant in support of his argument involve situations in which a defendant was charged with causing the ultimate harm.[22] In the present case, the defendant is not charged with Hirons' death. Accordingly, we conclude that the acts of the defendant's son do not constitute an efficient intervening cause for the purposes of § 53a-217a.

The judgment is affirmed.

In this opinion CALLAHAN, C. J., and BERDON and NORCOTT, Js., concurred.

---

[22] For example, in *State* v. *Wassil*, supra, 233 Conn. 175, the defendant was charged with manslaughter for delivering illegal narcotics to the victim who died after self-administering them. In *State* v. *Leroy*, supra, 232 Conn. 2, the defendant was charged with assault in the second degree with a motor vehicle while intoxicated after colliding with another vehicle and injuring that operator. In *State* v. *Spates*, supra, 176 Conn. 229–30, the defendant was charged with manslaughter in the death of a robbery victim where the defendant tied the victim up and refused to summon a doctor although he knew the victim had suffered from heart attacks in the past.

The defendant also cites *Quinnett* v. *Newman*, 213 Conn. 343, 568 A.2d 786 (1990) and *Burns* v. *Gleason Plant Security, Inc.*, 10 Conn. App. 480, 523 A.2d 940 (1987). In both of those cases, the defendants were relieved of liability from their negligent acts because the acts of a third party were unforeseeable and, therefore, were, as a matter of law, efficient intervening causes of the resulting harm. Those cases, therefore, are inapposite to the present case.

MCDONALD, J., concurring. I concur in the result. Under the stipulated facts, the conduct of the defendant, Joseph Wilchinski, fits within the purview of General Statutes §§ 53a-217a and 29-37i and the defendant does not address General Statutes § 26-38 (a) in his void for vagueness claim.[1]

---

[1] General Statutes § 26-38 (a) provides: "Any person over the age of eighteen years who holds a firearms hunting or archery hunting license may, while hunting with firearms or bows, be accompanied by not more than two minors between the ages of twelve and sixteen years who may hunt with firearms or bows if such minors hold a junior firearms hunting or junior archery hunting license, and provided such person and such minors shall not carry more than one gun or bow each. Such licensee shall be responsible for the observance by such minors of all game laws and regulations made by the commissioner. No provision hereof shall affect the right of persons over the age of eighteen years exempt from license requirements to be accompanied by a minor, provided the other provisions hereof shall be observed."