[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO DISMISS AND REQUEST OF A FINDING OF NO PROBABLE CAUSE
For the purpose of this probable cause hearing the court finds, with acquiescence of the defendant as to counts two, three and four that the defendant's actions resulted in Antonia Rodgers' death and that Antonia Rodgers was a viable unborn fetus at the time the defendant stabbed Demetrus Rodgers.
The question presented in this case is one of first impression in Connecticut; specifically, whether the defendant can be tried for murder and capital felony for the killing of an infant who succumbs forty-two days following a Caesarean birth necessitated by the fatal stabbing of her pregnant mother?
The defendant in his memorandum dated March 2, 1999 set forth his claims and thereby framed the issues to be decided by this court: first that the defendant cannot be charged with the murder of an unborn child, even if it was viable at the time of the defendant's conduct; secondly, even if Antonia survived long enough to be "born alive" the Connecticut Legislature did not intend the murder statute or the capital felony statute to apply to such a situation; thirdly, that the defendant did not have the "conscious objective" to cause such "inchoate person's" death at the time he acted as the extent that Antonia's status as a "person born alive" was both unknown and not a knowable fact at the time he acted; and fourthly, to prosecute the defendant for murder and capital felony would violate the defendant's right to notice and his right not to be prosecuted under ex post facto law.
The defendant's primary contention regarding probable cause is that, even if the allegations of the state are true, the death of Antonia Rodgers does not amount to murder under General CT Page 5516 Statutes § 53a-54a, because Antonia was not a "person," as defined by the criminal code, at the time of the defendant's actions. The defendant argues that he is not, therefore, eligible to be charged under the capital felony statute, § 53a-54b(8) and (9), under the theories of "murder of two or more persons" and "murder of a person under sixteen years of age." Therefore, the defendant claims that the court lacks the legal basis to find probable cause for the charge of the murder of Antonia Rodgers and the two capital felony charges based on her death.
Both the murder statute, § 53a-54a, and the capital felony statute, § 53a-54b, require the death of a "person." For the purposes of the penal code, General Statutes § 53a-3(1) defines "person" as "a human being." "There is no explicit definition of the term `human being' in the General Statutes." State v.Anonymous, 40 Conn. Sup. 498, 499, 516 A.2d 156 (1986). This statutory definition is not sufficient to dispose of this issue without further inquiry. In order to determine whether the death of Antonia Rodgers qualifies as the death of a person under §§53a-54a and 53a-54b, this court must engage in statutory interpretation.
"[T]he process of statutory interpretation, involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, we presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law. . . . In addition, when the statute being construed is a criminal statute, it must be construed strictly against the state in favor of the accused." State v. Cardwell,246 Conn. 721, 738-39, 718 A.2d 954 (1998). "Moreover, [it] is . . . a rule of statutory construction that statutes in derogation of the common law are to be strictly construed. . . . No statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express."Copeland v. Warden, 225 Conn. 46, 53, 621 A.2d 1311 (1993).
The words of the statutes involved in this case do not CT Page 5517 resolve the question of whether the death of a baby from injuries inflicted in utero can be the basis for charges of murder and capital felony. General Statutes § 53a-54a(a) provides in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person. . . ." The capital felony statute, §53a-54b, provides in pertinent part: "A person is guilty of a capital felony who is convicted of any of the following: . . . (8) murder of two or more persons at the same time or in the course of a single transaction; or (9) murder of a person under sixteen years of age." The question raised by the defendant is whether Antonia Rodgers, who was an eight and one-half month old fetus at the time of the defendant's actions, qualifies as a person under these statutes. The definition of a person under the penal code is found in General Statutes § 53a-3(1). Section53a-3 (1) provides: "`Person" means a human being, and, where appropriate, a public or private corporation, a limited liability company, an unincorporated association, a partnership, a government or governmental instrumentality." The language of these statutes do not shed any light on whether the death of a baby from injuries inflicted in utero may support murder or capital felony charges.
In the absence of clear language in the statutes themselves, the court must turn to the legislative history of the statutes for guidance. See State v. Grullon, 212 Conn. 195, 200,562 A.2d 481 (1989). The legislative history of the murder, capital felony, and definitional statutes, although extensive, provides no definitive answer to the question of the intent of the legislature regarding the current situation. It has been noted that "the murder section of the new penal code was `based partly on the New York Revised Penal Law and partly on the Model Penal Code. . . .' General Statutes Ann. § 53a-54a, Commission Comment-1971 (West 1985)." State v. Anonymous, supra,40 Conn. Sup. 500. Under New York's penal code, a "person" is defined as "a human being who has been born and is alive." New York Penal Law § 125.05 (Consol. 1984). Section 210.0 of the Model Penal Code defines a "human being" as "a person who has been born and is alive." The court adopted this reasoning in State v.Anonymous, supra, 40 Conn. Sup. 500-01, to find that the death of a fetus who was stillborn did not support a separate count of murder.
This court finds that the definition of a "person" in Connecticut criminal law includes those who are born and are CT Page 5518 alive. This definition does not exclude Antonia Rodgers. Dr. Palmer testified at the probable cause hearing that Antonia Rodgers was born and remained alive for 42 days before she succumbed to her injuries.
This interpretation of the statute's applicability to the facts of this case finds support in the common law "born alive" rule.
Analysis of "common law principles[1] governing the same general subject matter"; State v. Cardwell, supra, 246 Conn. 738; reveals that under the common law the death of a fetus could stand as a basis for murder as long as the fetus was born alive and subsequently died of injuries inflicted in utero.[2]
The same common law rules upon which the court relied in Statev. Anonymous, supra, 40 Conn. Sup. 502-03, lead to the contrary result in this case. Although a person could not be convicted if the child was stillborn, a person could be "convicted of homicide at common law for the death of a child as the result of prenatal injuries, [if] the child was first born alive." 40 A.L.R.3d 447 (1971). "If the child is born alive, despite an attack upon it and an injury to the mother while it was in the mother's womb, and the child thereafter dies as a result of the prenatal injury, a homicide has been committed." 2 C. Torcia, Wharton's Criminal Law (15th Ed. 1994), p. 140. Under the common law rule as stated above, Antonia Rodgers' death can be the basis of a homicide prosecution.
A review of the sources of legislative intent reveals that the class of victims protected by Connecticut's homicide statutes includes those who are born alive but later die of injuries inflicted in utero. The "born alive" rule has strong roots in the common law, and the criminal code and "does not fairly express" an "innovation upon [this] common law [rule]." Copeland v.Warden, supra, 225 Conn. 53.
The defendant correctly states that the rules of strict construction and lenity applicable to penal statutes are especially pertinent to a death penalty statute.
It is also true that "[u]nless a contrary interpretation would frustrate an evident legislative intent, criminal statutes are governed by the fundamental principle that such statutes are strictly construed against the state." State v. Ross,230 Conn. 183, 200, 646 A.2d 1318 (1994). CT Page 5519
However the rule of lenity "comes into play only if the statute remains ambiguous after all sources of legislative intent have been explored." State v. Ledbetter, 240 Conn. 317, 331 n. 12,692 A.2d 713 (1997); see also State v. Hinton, 227 Conn. 301,317-18, 630 A.2d 593 (1993).
The rule of lenity does not apply to require the reading of the statutes urged by the defendant. The process of statutory interpretation has revealed that the murder and capital felony statutes as applied to the facts of this case are not ambiguous. Antonia was born and lived for 42 days before she died of her prenatal injuries. The defendant's primary contention is that the definition of a "person" includes only those who are born and alive at the time of the defendant's actions for the purposes of the criminal code. This construction does not find support from the words of the statutes, the legislative history of the statutes, or the common law principles regarding the same subject matter. To the contrary, the legislative history of these statutes and a review of the common law on this point leads to the conclusion that the death of a baby who has been born alive from injuries inflicted in utero is a basis for a charge of murder. Statutes should not be construed as altering the common law unless they do so expressly. See Copeland v. Warden, supra,225 Conn. 53. These statutes do not remain ambiguous after "all sources of legislative intent have been explored." State v.Ledbetter, supra, 240 Conn. 331 n. 12. Therefore, the rule of lenity does not require dismissal of those charges against the defendant that are based on the death of Antonia Rodgers.
The defendant argues that, even if the court finds that Antonia Rodgers qualifies as a person under the relevant statutes, allowing the murder and capital felony charges against the defendant based on her death to stand constitutes a violation of the federal due process protections. The defendant argues that at the time he acted he had no notice and could not have known that her death could result in liability for murder. The defendant relies on the lack of statutory language including unborn children as "persons" and the court's decision in State v.Anonymous, supra, 40 Conn. Sup. 498, in contending that the law at the time of his actions was that Antonia Rodgers' death could not constitute a murder.
It is a basic principle of constitutional law "that a criminal statute must give fair warning of the conduct that it CT Page 5520 makes a crime." Bouie v. Columbia, 378 U.S. 347, 84 S.Ct. 1697,12 L.Ed.2d 894 (1964). The statute must give "a fair warning . . . to the world in language that the common world will understand, of what the law intends to do if a certain line is passed." McBoyle v. United States, 283 U.S. 25, 27,51 S.Ct. 340, 75 L.Ed. 816 (1931). Due process does not prohibit application of the process of statutory interpretation to a criminal statute. The Connecticut Supreme Court has stated that "[r]eferences to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain the statute's meaning. . . . Due process does not require statutes to provide a laundry list of prohibited conduct. . . . [L]aws may be general in nature so as to include a wide range of prohibited conduct. The constitution requires no more than a reasonable degree of certainty." State v. Wilchinski,242 Conn. 211, 224, 700 A.2d 1 (1997).
General Statutes §§ 53a-54a(a) and 53a-54b(8)(9) applied to the defendant under the facts of this case at the time the defendant acted. Under the common law, Antonia Rodgers' death would fall under the rule that an action for homicide stands as long as the person was born and alive before her death. That rule was not altered by the codification of the criminal law. In fact,State v. Anonymous, supra, 40 Conn. Sup. 502-03, on which the defendant relies, arguing that the criminal code altered the common law rule, expressly follows the common law rule. In that case, the court applied the common law rule to find that the death of a stillborn baby cannot support a murder charge, stating that "[i]t is also assumed that the legislature, in enacting the murder statute, was familiar with the general rules of the common law." Id., 502. The court may reference "the common law . . . to ascertain the statute's meaning." State v. Wilchinski, supra,242 Conn. 224. As far as it stands for the proposition that Connecticut follows the common law rule on this point, the court's decision in State v. Anonymous can be considered to have actually given notice that the defendant's actions concerning Antonia Rodgers constituted a murder separate from that of her mother. See State v. Thompson, 197 Conn. 67, 79, 495 A.2d 1054
(1985) (looking to precedent to establish due process notice);State v. Tyson, 195 Conn. 325, 332-33, 487 A.2d 1091 (1985) (same).
The defendant also argues that application of the common law rule in this case would amount to a violation of the federal ex post facto clause. The defendant's ex post facto clause claim CT Page 5521 fails for many of the same reasons as the due process claim. Laws that violate the ex post facto clause include "every law thatchanges the punishment, and inflicts a greater punishment, than the law annexed to the crime when committed," or a law "which makes more burdensome the punishment for a crime after its commission." Collins v. Youngblood, 497 U.S. 37, 42,110 S.Ct. 2715. 111 L.Ed.2d 30 (1990). As discussed above, the rule which applies to establish the defendant's liability was not created after he acted. That rule existed before the murder and capital felony statutes were enacted and continues to be in effect after their enactment. See State v. Anonymous, supra,40 Conn. Sup. 502-03. Therefore, to apply the "born alive" rule to this defendant would not make "more burdensome the punishment for a crimes after its commission." Collins v. Youngblood, supra,497 U.S. 42.[3]
The defendant argues that the "born alive" rule should only be applicable prospectively, and has been so applied in other jurisdictions to avoid constitutional problems. The defendant relies on two cases from other jurisdictions, Commonwealth v.Cass, 392 Mass. 799, 467 N.E.2d 1324 (1984), and State v. Horne,282 S.C. 444, 319 S.E.2d 703 (1984). In each case, the court held that the death of a fetus in the womb was sufficient to satisfy the relevant homicide statutes. See Commonwealth v. Cass, supra, 457 N.E.2d 1325; State v. Horne, supra 319 S.E.2d 704. As each court acknowledged, these holdings that a stillborn infant is a possible homicide victim were not supported by prior law; therefore each decision was applied prospectively, a special procedure allowed in those jurisdictions. See Commonwealth v.Cass, supra, 467 N.E.2d 1325; State v. Horne, supra, 319 S.E.2d 704. These cases are inapposite.
This court therefore finds that the state has proffered sufficient evidence to support a finding of probable cause that at the time of her death Antonia Rodgers was a person.
This does not end the court's inquiry into whether or not prosecution of the defendant for murder of Antonia Rodgers under § 53a-54a and capital felony under § 53a-54b(8)(9) should be approved and may continue.
The defendant alleges in his motion to dismiss that there is no logical or rational basis to conclude that there was any concurrence between the mens rea and the actus reus of the charged offenses in Counts 2, 3 and 4 of the information. CT Page 5522
General Statutes § 53a-54a(a) provides, in pertinent part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or a third person . . ." "The elements of intentional murder with which the defendant was charged under General Statutes § 53a-54a
are (1) intent [and] (2) causation. . . ." State v. Rasmussen,225 Conn. 55, 74, 621 A.2d 728 (1993); see also State v. Newsome, supra, 238 Conn. 598 (stating that "the elements of [General Statutes § 53a-54a] are intent and causation.").
The intent required by General Statutes § 53a-54a(a) may be supplied under the doctrine of transferred intent. "The clear meaning of the statute leads to the result that, when a person engages in conduct with the intent to kill someone, there can be a separate count of murder for every person actually killed by the conduct." State v. Hinton, 227 Conn. 301, 309, 630 A.2d 593
(1993). Therefore, when a defendant fires a shotgun towards a group of people intending to kill only one, but in fact killing three people, the defendant is liable for three separate murders. See id., 308. If the state has proffered sufficient evidence of the defendant's intent to kill the mother, the doctrine of transferred intent applies that intent to the child. Therefore, the defendant is liable for a second murder.
"Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the death." (Internal quotation marks omitted.) State v. Crespo,246 Conn. 665, 673, 718 A.2d 925 (1998), cert. denied, ___ U.S. ___,119 S.Ct. 911, 142 L.Ed.2d 909 (1999). The state proffered evidence at the probable cause hearing that the defendant stabbed Demetris Rodgers seven times with a knife. One stab wound was to the heart, and six were to the posterior abdominal wall. The defendant's use of a knife to cause such serious injuries evidences his intent to kill Demetris Rodgers. Therefore, as required by § 53a-54a(a), "with intent to cause the death of another person," Demetris Rodgers, the defendant caused "the death of . . . a third person," Antonia Rodgers. Just as the defendant's intent to kill one person was transferred to the additional victims in State v. Hinton, supra, 227 Conn. 309, this defendant's intent to kill Demetris Rodgers is applicable to Antonia Rodgers' death.
Obviously, there are many instances where an adult victim has CT Page 5523 died some considerable time after the infliction of the fatal blow or wound. If the victim recovers and survives, whether by reason of medical or surgical treatment, or otherwise, there is no homicide; yet, if he dies from such wounds, it is murder. While such medical or surgical treatment may be a so-called intervening factor between the point of infliction of injury and resultant survival or death, nevertheless, the issue of homicide is resolved by the initial circumstances that caused the death.
There is no logical reason why any different rule should apply to an unborn fetus who is successfully delivered alive and lives independent of his mother for a reasonable time — at least for sufficient time so as not to be "still born," as that term is accepted by the medical profession and our society.
The state must also provide sufficient evidence that the defendant's actions caused the victim's death. "To prove causation, the state is required to demonstrate that the defendant's conduct was a proximate cause of the victim's death — i.e., that the defendant's conduct contributed substantially and materially, in a direct manner, to the victim's injuries and that the defendant's conduct was not superseded by an efficient intervening cause that produced the injuries." State v. Wassil, 233, Conn. 174, 181, 658 A.2d 548 (1995). The state proffered evidence that Demetris Rodgers was dead on arrival at the emergency room. Doctor Palmer then performed an emergency caesarean section and delivered the baby, Antonia. The state proffered evidence that Antonia died of global anoxic encephalopathy 42 days after her birth. In other words, Antonia Rodgers' death was caused by her mother's prenatal death. This chain of causation is sufficient to establish the defendant's liability under § 53a-54a for Antonia's death. It was the stab wounds to her mother that caused not only her mother's death, but also, Antonia's injuries and death. In this case, "the defendant's conduct contributed substantially and materially, in a direct manner, to the victim's injuries." State v. Wassil, supra, 233 Conn. 174; see also State v. Munoz, 233 Conn. 106,122, 659 A.2d 683 (1995); State v. Leroy, 232 Conn. 1, 12-13,653 A.2d 161 (1995). Furthermore, the defendant has conceded that the state has proffered sufficient evidence to support a finding that his actions resulted in Antonia's death. See Defendant's Memorandum of Law, dated March 2, 1999, p. 1.
A finding of probable cause for the capital felony counts logically follows from a finding of probable cause for the murder CT Page 5524 count involving Antonia Rodgers. The defendant is charged with two counts of capital felony under General Statutes § 53a-54b(8) and (9). Section 53a-54b(8) states that a person who is convicted of the "murder of two or more persons at the same time or in the course of a single transaction" is guilty of a capital felony, probable cause for the murder charge involving Antonia Rodgers is based on the same transaction that killed her mother. This court having determined that Antonia is a "person" for the purposes of the criminal code, there is sufficient evidence for a probable cause finding that the defendant murdered two "persons at the same time or in the course of a single transaction." General Statutes § 53a-54b(8). It is undisputed that Antonia was under the age of sixteen at all relevant times. Therefore, a finding of probable cause for the murder count involving Antonia Rodgers mandates a finding of probable cause under § 53a-54b(8)(9).
Accordingly probable cause is found as to counts 2, 3 and 4 of the information, prosecution of the defendant on said counts is approved and may continue.
DAMIANI, J.