## STATE OF CONNECTICUT *v.* BRIAN K. MCMAHON, JR.
### (SC 16322)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

---

Argued May 22—officially released August 14, 2001

*M. Hatcher Norris*, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, was *Patricia A. Swords*, state's attorney, for the appellee (state).

### Opinion

KATZ, J. The defendant, Brian K. McMahon, Jr., appeals from the judgment of conviction, rendered after a trial to the court, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (3)[1] and 53a-55a,[2] in connection with a hunting incident that resulted in the death of the victim, Ronald Eckert, Jr.[3]

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] General Statutes § 53a-55a provides: "(a) A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. No person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree with a firearm upon the same transaction but such person may be charged and prosecuted for both such offenses upon the same information.

"(b) Manslaughter in the first degree with a firearm is a class B felony and any person found guilty under this section shall be sentenced to a term of imprisonment in accordance with subdivision (4) of section 53a-35a of which five years of the sentence imposed may not be suspended or reduced by the court."

[3] The defendant also was charged with and convicted of: one count of criminal trespass in the third degree in violation of General Statutes § 53a-109 (a) (2); three counts of illegal hunting of deer with a firearm in violation of General Statutes § 26-86a (a), and Regs., Conn. State Agencies § 26-86a-

The defendant raises four issues on appeal. First, he claims that the trial court improperly denied his motion to dismiss the manslaughter charge. Specifically, he contends that § 53a-55 (a) (3) is unconstitutionally vague as applied to the facts of this case, because the statute fails to define the phrases "extreme indifference to human life" and "grave risk of death." Second, he contends that the trial court unconstitutionally subjected him to double jeopardy by applying the sentence enhancement provision of General Statutes § 53-202k[4] to his sentence for manslaughter in the first degree with a firearm. Third, he claims that the trial court improperly applied the § 53-202k sentence enhancement to both the suspended and nonsuspended portions of his split sentence. Finally, the defendant contends that the trial court improperly found that there was sufficient evidence to convict him of manslaughter in the first degree with a firearm in violation of §§ 53a-55

---

6 (d); one count of illegal hunting of deer in violation of General Statutes §§ 26-27 (a), 26-82 (a); two counts of violation of hunting regulations in violation of General Statutes § 26-66, and Regs., Conn. State Agencies § 26-66-1 (e) and (r); and one count of hunting on a Sunday in violation of General Statutes § 26-73. In a part B information, the state alleged additionally that the defendant had been convicted previously of illegal hunting in violation of § 26-82. The manslaughter conviction is the only conviction at issue in this appeal.

[4] General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

Although it appears that the state charged the defendant with a violation of § 53-202k as a separate offense, the trial court treated § 53-202k as an enhancement statute only, based on this court's decision in State v. Dash, 242 Conn. 143, 146, 698 A.2d 297 (1997). The trial court found that the defendant had used a firearm in the commission of a class B felony in violation of § 53-202k, and applied the sentence enhancement to the sentence for the underlying manslaughter conviction.

(a) (3) and 53a-55a. We reject the defendant's claims and, accordingly, affirm the judgment of the trial court.

The trial court reasonably could have found the following facts. At approximately 6:50 a.m. on Sunday, October 25, 1998, the defendant left his home in Coventry with a .44 caliber rifle that he had purchased the week before from a private owner at a local bar. He intended to hunt for deer, despite the fact that hunting season was closed and that he had neither a hunting license nor a deer permit. The defendant entered a section of the woods directly across from the house in which he lived with his wife, his two year old son, his mother, his two brothers and his stepfather. The woods were privately owned, and often used by residents for recreational activities, including walking, hiking, bicycling and motorcycling.[5] The defendant did not have permission from the owner to hunt on the property and, because he was aware that he was hunting illegally, he wore camouflage clothing to avoid detection.

The defendant walked approximately one quarter of one mile into the woods, slightly uphill, on a designated walking trail, and then turned off of the trail and walked another one quarter of one mile. Eventually, he walked down a slope and sat down on a rock facing away from the trail, and waited for deer. After about fifteen minutes, the defendant heard from behind what he thought was a deer snort. He turned and walked approximately fifteen to twenty feet back up the slope in the direction of the sound. The area was thickly wooded, and the fall foliage was full and multicolored. The defendant, who is color-blind, perceived what he thought was a deer, approximately 175 feet away. After a few minutes, the defendant took aim and fired one shot up the slope through the trees. The bullet struck the victim

---

[5] Although the privately owned property is wooded, there is a walking trail located, in part, within a utility right-of-way.

in the back and exited through his chest, lodging in his arm. The victim, a thirty-three year old man, had been walking his dog along the trail and had been either sitting or standing on a rock when the bullet struck him. The defendant immediately heard the victim moan and, suspecting that he had shot someone, the defendant ran back to his house for help.

The defendant and his brother immediately returned to the woods with an all-terrain vehicle and confirmed that the defendant had shot a person. The defendant returned to his house a second time, to ask his wife, a nurse's aide, to return to the woods with him. She did so and when they arrived back at the victim's location, she could not detect the victim's pulse. Thereafter, the defendant returned to his house for a third time, by which time, his stepfather had called the Coventry police department for assistance. Although a helicopter arrived and transported the victim from the scene, he had been on his back where he had fallen for some time[6] and he died as a result of the gunshot wound.

At trial, the defendant admitted that he was hunting on private property without the owner's permission, on a Sunday, without a license, a deer permit, or the required blaze orange outerwear, in full autumn foliage, and that he is color-blind. Nevertheless, he claimed that what had transpired in the woods was simply a terrible hunting accident, and that he had not acted with sufficient recklessness to be convicted of manslaughter. At the conclusion of the state's case, the defendant moved to dismiss the manslaughter charge, claiming that, although criminally negligent homicide might have been an appropriate charge, manslaughter was not. The trial court deferred any action on the motion to dismiss until

---

[6] Although a neighbor estimated hearing a gunshot at approximately 7:10 a.m., the police did not receive the telephone call from the defendant's stepfather until 7:48 a.m., and did not arrive at the defendant's house until 7:51 a.m.

the conclusion of the case, at which time it denied the motion. The trial court thereafter found the defendant guilty on all nine counts of the first part of the substitute information.

Thereafter, on the second part of the information, the trial court found that the defendant had used a firearm in the commission of a class B felony in violation of § 53-202k, and enhanced his sentence accordingly. The court sentenced the defendant for his conviction of manslaughter in the first degree with a firearm to a term of thirty years incarceration, execution suspended after fourteen years, and five years probation. The court subsequently applied the § 53-202k five year sentence enhancement to both the suspended and nonsuspended portions of the split sentence. Accordingly, the trial court sentenced the defendant to a total effective sentence of thirty-five years incarceration, execution suspended after nineteen years, and five years probation.[7] Additional facts will be provided as necessary.

I

The defendant first contends that the trial court improperly denied his motion to dismiss the manslaughter charge on the grounds that § 53a-55 (a) (3) is unconstitutionally vague as applied to his conduct[8] and,

---

[7] The defendant also received the following sentences: (1) three months for one count of criminal trespass in violation of General Statutes § 53a-109 (a) (2); (2) six months and a $200 fine for each of three counts of illegal hunting of deer with a firearm in violation of General Statutes § 26-86a (a), and Regs., Conn. State Agencies § 26-86a-6 (d); (3) one year and a $200 fine for one count of illegal hunting of deer in violation of General Statutes §§ 26-27 and 26-82 (a), an enhanced sentence based on the defendant's 1992 conviction of illegal hunting of deer; sixty days for each of two counts of violation of hunting regulations in violation of General Statutes § 26-66, and Regs., Conn. State Agencies § 26-66-1 (e) and (r); sixty days for one count of hunting on a Sunday in violation of General Statutes § 26-73. The trial court ordered all sentences to run concurrently.

[8] The defendant does not claim that the statute is unconstitutionally vague on its face.

therefore, violates his rights to due process under the federal and state constitutions.[9] Specifically, the defendant claims that, as a result of the legislature's failure to define the phrases "extreme indifference to human life" and "grave risk of death" in § 53a-55 (a) (3), he had no warning of the statute's application to the facts in this case, and was subjected to the statute's arbitrary and discriminatory application. The state, in contrast, claims that the trial court properly denied the defendant's motion to dismiss, contending that the legislature's failure to define specific terms in the statute does not render § 53a-55 (a) (3) unconstitutionally vague.

We conduct our review of this claim mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." *Beccia* v. *Waterbury*, 192 Conn. 127, 133, 470 A.2d 1202 (1984); *State* v. *Wilchinski*, 242 Conn. 211, 217–18, 700 A.2d 1 (1997). We conclude that the defendant has failed to meet that burden.

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what

---

[9] "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution." *Packer* v. *Board of Education*, 246 Conn. 89, 98, 717 A.2d 117 (1998). The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ." Article first, § 8, of the Connecticut constitution provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ." Due process "requires that statutes with penal consequences provide sufficient notice to citizens to apprise them of what conduct is prohibited. . . . [This court has] equated vagueness analysis under our state constitution with the corresponding federal constitutional analysis." (Citation omitted.) *Packer* v. *Board of Education*, supra, 99.

conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender* v. *Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *State* v. *Wilchinski*, supra, 242 Conn. 219; *State* v. *DeFrancesco*, 235 Conn. 426, 443, 668 A.2d 348 (1995); *State* v. *Indrisano*, 228 Conn. 795, 802, 640 A.2d 986 (1994). "[The doctrine] embodies two central precepts: the right to fair warning of the effect of a governing statute or regulation and the guarantee against standardless law enforcement." *State* v. *Schriver*, 207 Conn. 456, 459–60, 542 A.2d 686 (1988). The United States Supreme Court has emphasized that "the more important aspect of the vagueness doctrine is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement." (Internal quotation marks omitted.) *Kolender* v. *Lawson*, supra, 357–58; *State* v. *Schriver*, supra, 460. Thus, "[i]n order to surmount a vagueness challenge, 'a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited' "; *State* v. *Schrivener*, supra, 460; and must not " 'impermissibly [delegate] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.' " Id.; see *Grayned* v. *Rockford*, 408 U.S. 104, 108–109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). Finally, "[i]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness . . . for [i]n most English words and phrases there lurk uncertainties." (Internal quotation marks omitted.) *State* v. *Payne*, 240 Conn. 766, 778, 695 A.2d 525 (1997). "[T]he statute must contain some core meaning within which the defendant's actions clearly fall." *State* v. *Wilchinski*, supra, 220. "References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning

to determine if it gives fair warning." *State* v. *Pickering*, 180 Conn. 54, 62–63, 428 A.2d 322 (1980).

With these principles in mind, we turn to the defendant's void for vagueness claim. The defendant claims that the phrases "extreme indifference to human life" and "grave risk of death" contained in § 53a-55 (a) (3) are unconstitutionally vague because they did not give him fair warning that he could be convicted of manslaughter in the first degree for accidently killing a person while hunting deer for sport. The defendant further contends that, because the legislature did not define these phrases, the statute is susceptible to arbitrary enforcement, and that the prosecutor enforced it arbitrarily against him in this case. The state claims, in contrast, that the common meaning of these statutory phrases and judicial opinions involving § 53a-55 (a) (3) gave the defendant warning that the statute proscribed his conduct. We agree with the state.

The Penal Code does not define the phrases "extreme indifference to human life" and "grave risk of death." General Statutes § 1-1, entitled "[w]ords and phrases," however, provides in relevant part: "(a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. . . ." Thus, the meaning of "extreme indifference to human life" and "grave risk of death" can be achieved by reference to any dictionary and to judicial opinions addressing violations of § 53a-55 (a) (3). *State* v. *Pickering*, supra, 180 Conn. 62–63; see also *State* v. *Best*, 56 Conn. App. 742, 755–56, 745 A.2d 223, cert. denied, 253 Conn. 902, 753 A.2d 937 (2000) (referring to dictionary for definitions of "extreme" and "grave").

In looking to the statute itself, the legislature has provided some guidance as to the level of "indifference"

it intended in § 53a-55 (a) (3) by modifying the level of indifference with the adjective "extreme." Extreme is defined as "existing in the highest or greatest possible degree," and is synonymous with "excessive." Webster's Third New International Dictionary. The adjective "grave" is defined as "very serious: dangerous to life . . . ." Id.

Judicial opinions provide further guidance as to the meaning of these phrases. In particular, "we take into account any prior interpretations that this court, our Appellate Court and the Appellate Session of the Superior Court, have placed on the statute." *State* v. *Indrisano*, supra, 228 Conn. 805. Prior judicial opinions involving the phrases "extreme indifference to human life" and "grave risk of death" have emphasized that the phrases are given their plain meaning. In *State* v. *Spates*, 176 Conn. 227, 236–37, 405 A.2d 656 (1978), this court concluded that the trial court had properly defined "extreme indifference" for the jury according to its "ordinary meaning," by stating that it meant more than "[m]ere carelessness" or "ordinary recklessness . . . ." Similarly, in *State* v. *Bunker*, 27 Conn. App. 322, 326–27, 606 A.2d 30 (1992), the Appellate Court concluded that the trial court's jury instruction, defining "extreme indifference to human life" as "a high degree of disinterest to human life," was proper. See also *State* v. *Pitt*, 28 Conn. App. 825, 830–31, 612 A.2d 60, cert. denied, 224 Conn. 907, 615 A.2d 1049 (1992) (trial court properly refused to define "extreme indifference" and "grave risk of death" for jury where instruction was clear that, in accordance with "ordinary meaning" of phrases, "aggravated form of recklessness" required).

In addition, "prior decisions of this court which delineate a statute's reach can constitute sufficient notice of the acts prohibited to render the statute constitutional as applied to the particular facts of a case." *State* v. *Pickering*, supra, 180 Conn. 63. The scope of the

conduct that the phrases "extreme indifference to human life" and "grave risk of death" encompass has been elucidated repeatedly by opinions of this court upholding convictions under § 53a-55 (a) (3). In *State* v. *Bunkley*, 202 Conn. 629, 642, 522 A.2d 795 (1987), the defendant claimed that § 53a-55 (a) (3) was unconstitutionally vague as applied to his conduct on a theory similar to that upon which the defendant relies in this case. Specifically, the defendant therein contended that he could not have known that he could be convicted of manslaughter for a death resulting from an automobile accident because the standard of recklessness as defined for the purposes of § 53a-55 (a) (3) "did not give him fair warning when his conduct became reckless as opposed to criminally negligent." Id. This court concluded that the mental state required for a violation of § 53a-55 (a) (3) was clear. Id. "Recklessness involves a subjective realization of a risk and a conscious decision to ignore that risk . . . ." (Citation omitted.) Id., 643. The court in *Bunkley* affirmed the defendant's conviction, concluding that § 53a-55 (a) (3) was not unconstitutionally vague as applied to him because he had chosen, while evading police pursuit, to drive at an excessive rate of speed, to improperly pass other vehicles, to disregard traffic signals, and to drive on the wrong side of the road. Id., 631, 644, 645. Numerous other decisions of this court and the Appellate Court have addressed the application of the manslaughter statutes in varied factual contexts. See, e.g., *State* v. *Wassil*, 233 Conn. 174, 191–92, 658 A.2d 548 (1995) (affirming conviction where defendant delivered drugs to victim who later died after ingesting them); *State* v. *Carpenter*, 214 Conn. 77, 85, 570 A.2d 203 (1990) (affirming conviction where defendant caused death of baby by throwing her into bathtub in frustration), on appeal after remand, 220 Conn. 169, 595 A.2d 881 (1991), cert. denied, 502 U.S. 1034, 112 S. Ct. 877, 116 L. Ed.

2d 781 (1992); *State* v. *Pellegrino*, 194 Conn. 279, 294–95, 480 A.2d 537 (1984) (affirming conviction under § 53a-55 [a] [3] where defendant and accomplice set business on fire, and accomplice died in fire); *State* v. *Shine*, 193 Conn. 632, 643, 479 A.2d 218 (1984) (affirming conviction where intoxicated defendant drove car directly into two pedestrians causing their deaths); *State* v. *Spates*, supra, 176 Conn. 237 (affirming conviction under § 53a-55 [a] [3] where defendant, in course of robbing victim, ignored victim's pleas for medical attention, resulting in victim's death from heart attack); *State* v. *Johnson*, 29 Conn. App. 394, 396, 615 A.2d 512 (1992) (affirming conviction where defendant drove wrong way on highway, colliding with and causing death of victim), appeal dismissed, 227 Conn. 611, 630 A.2d 69 (1993); *State* v. *Hall*, 28 Conn. App. 771, 773, 612 A.2d 135, cert. denied, 224 Conn. 904, 615 A.2d 1045 (1992) (affirming conviction where defendant hit victim in head with brick causing his death).

The defendant in the present case previously had been convicted of illegal hunting in 1992. When he fired the fatal shot, the defendant was hunting on private property without permission, during the closed season, on a Sunday. In addition, he was hunting without a license or a deer permit, and without the required blaze orange safety attire, in a wooded area thick with foliage with the knowledge that he is color-blind. The defendant shot a long-range, high-powered rifle without a proper sight line or a proper backstop into an area that he knew or should have known was frequented by people walking and riding their bicycles. Finally, when the defendant first suspected that he had shot a person, he failed to investigate immediately, and after he had confirmed his suspicions, he failed to render medical aid to the victim. The defendant also delayed in calling the police for assistance. In light of the plain meaning and judicial interpretations of the phrases "extreme

indifference to human life" and "grave risk of death," we conclude that a person of ordinary intelligence would have had fair warning that the defendant's actions in this case were proscribed under § 53a-55 (a) (3).[10] Therefore, we conclude that § 53a-55 (a) (3) is not unconstitutionally void for vagueness as applied to the defendant in this case, and that the trial court properly denied the defendant's motion to dismiss.

II

The defendant next claims that the trial court improperly applied the § 53-202k sentence enhancement to his conviction for first degree manslaughter with a firearm. He makes two separate claims with regard to § 53-202k. First, the defendant claims that the trial court's application of the statute's sentence enhancement provision for the commission of a class A, B or C felony with a firearm, to the defendant's sentence for the crime of manslaughter in the first degree with a firearm, violated his constitutional rights against double jeopardy by punishing him twice for the same offense, namely, the use of a firearm. Second, the defendant claims that the trial court's application of § 53-202k's five year mandatory minimum to both the suspended and nonsuspended

---

[10] The defendant offers No. 00-142 of the 2000 Public Acts (P.A. 00-142), entitled "An Act Concerning Hunting Safety," which became effective on October 1, 2000, as an example of "constitutional fair warning to the effect of a governing statute in the case of a hunting accident," because it "details a series of hunting offenses." The defendant's reliance on P.A. 00-142, however, is misplaced. First, "[d]ue process does not require statutes to provide a laundry list of prohibited conduct." *State* v. *Wilchinski*, supra, 242 Conn. 224. Second, the defendant makes no claim that P.A. 00-142 actually governs his conduct in this case, and we fail to see how its enactment bears on the defendant's vagueness challenge to § 53a-55 (a) (3). Finally, in the absence of clear legislative intent to the contrary, the existence of statutes proscribing a specific type of conduct does not preclude criminal prosecution for that conduct under other relevant statutes. *State* v. *Bunkley*, supra, 202 Conn. 638–41 (existence of statutes pertaining specifically to death caused by improper use of automobile did not preclude criminal prosecution under manslaughter statute).

portions of his split sentence violated statutory restrictions on maximum sentences. We disagree with both of these claims.

## A

In support of his claim that the trial court's determination to enhance his sentence under § 53-202k constitutes double jeopardy in violation of the state and federal constitutions,[11] the defendant contends that his sentence already had been enhanced for use of a firearm by virtue of his conviction of manslaughter in the first degree with a firearm.[12] Therefore, the defendant claims that the application of the § 53-202k sentence enhancement provision to the underlying offense which has, as an element, the use of a firearm, subjected him to double jeopardy for that same offense.[13] The state maintains that the trial court's imposition of two consecutive mandatory minimum sentences for the use of a firearm in the commission of first degree manslaughter is consistent with the authority and intent of the legislature, and does not place the defendant in double jeopardy. We agree with the state.

---

[11] "The right not to be twice put in jeopardy is a fundamental guarantee of both the federal constitution; U.S. Const., amend. V; see also *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) (federal double jeopardy clause applicable to states); and the [Connecticut] constitution. See, e.g., *State* v. *Nixon*, 231 Conn. 545, 550, 651 A.2d 1264 (1995) (right to protection against double jeopardy is implicit in due process guarantees of state constitution)." *State* v. *Tate*, 256 Conn. 262, 271 n.10, 773 A.2d 308 (2001).

[12] Manslaughter in the first degree carries a minimum sentence of one year incarceration and a maximum sentence of twenty years incarceration. General Statutes §§ 53a-55, 53a-35a (4). Manslaughter in the first degree with a firearm carries a minimum sentence of five years incarceration and a maximum sentence of forty years incarceration. General Statutes §§ 53a-55a, 53a-35a (4).

[13] The defendant relies on *United States* v. *Blake*, 59 F.3d 138, 139–40 (10th Cir. 1995), to support his claim that the trial court's application of § 53-202k to § 53a-55a constituted impermissible double counting. *Blake*, however, construed the federal sentencing guidelines and, therefore, is inapposite to the present case. Id.

"The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments [in the same trial] for the *same* offense. . . . The third of these protections is at issue in the present case." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hickam*, 235 Conn. 614, 617–18, 668 A.2d 1321 (1995), cert. denied, 517 U.S. 1221, 116 S. Ct. 1851, 134 L. Ed. 2d 951 (1996). While "[t]he constitution of Connecticut has never contained a provision against double jeopardy . . . [it] has long [been] recognized as a fundamental principle of common law that no one shall be put in jeopardy more than once for the same offense." (Citations omitted.) *State* v. *Langley*, 156 Conn. 598, 600–601, 244 A.2d 366 (1968), cert. denied, 393 U.S. 1069, 89 S. Ct. 726, 21 L. Ed. 2d 712 (1969).

In *State* v. *Dash*, 242 Conn. 143, 146, 698 A.2d 297 (1997), this court concluded that § 53-202k is a sentence enhancement, not a separate felony offense. See also *State* v. *Delgado*, 247 Conn. 616, 634, 725 A.2d 306 (1999) (remanding for modification of judgment to reflect that § 53-202k is not separate offense). As evidenced by our prior conclusions in this line of cases, we consistently have sanctioned the application of § 53-202k's sentence enhancement provision for the use of a firearm in the commission of a class A, B or C felony, to a conviction of a class A, B or C felony, as not violating double jeopardy principles. *State* v. *Delgado*, supra, 634; *State* v. *Dash*, supra, 146. The more specific question in this case, however, is whether the application of the § 53-202k sentence enhancement for the *use of a firearm* in the commission of a class A, B or C felony, to an

underlying offense, an element of which is *the use of a firearm*, puts the defendant in double jeopardy for the same offense, namely, the use of that firearm.

There is a presumption that double jeopardy is violated where a defendant is given multiple punishments for the same conduct. *North Carolina* v. *Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). That presumption, however, is not conclusive; it may be rebutted by evidence of clear legislative intent to punish the individual acts separately, rather than to punish only the course of action that they constitute. *State* v. *Nixon*, 231 Conn. 545, 555, 651 A.2d 1264 (1995); *State* v. *Freeney*, 228 Conn. 582, 587, 637 A.2d 1088 (1994). "With respect to cumulative sentences imposed in a single trial, the [d]ouble [j]eopardy [c]lause does no more than prevent the . . . court from prescribing greater punishments than the legislature intended." *Missouri* v. *Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983). "The issue, though essentially constitutional, becomes one of statutory construction." *State* v. *Anderson*, 211 Conn. 18, 26, 557 A.2d 917 (1989).

In the present case, "[o]ur analysis [of § 53-202k] is governed by well established principles of statutory construction." *State* v. *Dash*, supra, 242 Conn. 146. "[O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id., 147.

The express language of General Statutes § 53-202k provides in part that "[a]ny person who commits *any* class A, B or C felony" with a firearm "shall be impris-

oned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony." (Emphasis added.) The use of the modifier "any" suggests an affirmative attempt by the legislature to subject all class A, B or C felonies to § 53-202k's five year enhancement. Moreover, the statute makes no exception for class A, B or C felonies that have, as an element, the use of a firearm.

It is important to note that the absence of an explicit exception for felonies committed with a firearm under § 53-202k is in stark contrast to § 53a-55a; see footnote 2 of this opinion; in which the legislature specifically addressed the overlap between convictions for class B felonies and convictions for class B felonies involving a firearm. General Statutes § 53a-55a (a) expressly provides in part that "[n]o person shall be found guilty of manslaughter in the first degree and manslaughter in the first degree *with a firearm* upon the same transaction . . . ." (Emphasis added.) The language that the legislature included in § 53-202k, coupled with its demonstrated ability to create exceptions when it intends to, suggests that the legislature did not intend to except a conviction for manslaughter with a firearm under § 53a-55a from the application of the § 53-202k sentence enhancement. See *State* v. *Davis*, 255 Conn. 782, 791, 772 A.2d 559 (2001) (noting that, had legislature intended to except unarmed accessories from § 53-202k, it could have expressed its intent).

This court previously has examined the legislative history of § 53-202k, which supports the state's contention that the legislature intended to impose § 53-202k's enhancement provision on all class A, B and C felonies, including those that have, as an element, the use of a firearm. "Section 53-202k was enacted as part of a comprehensive legislative plan for dealing with assault weapons." *State* v. *Dash*, supra, 242 Conn. 148.

In particular, "§ 53-202k was intended, '[to add] five years to the end of *whatever other sentence* [a defendant is] receiving as a consequence of these acts.' " (Emphasis added.) Id., 149, quoting 36 H.R. Proc., Pt. 33, 1993 Sess., pp. 11,727, remarks of Representative Michael P. Lawlor. " 'The purpose, of course, *is to make the penalties greater and greater* if you use these weapons.' " (Emphasis in original.) Id., quoting 36 H.R. Proc., supra, p. 11,725, remarks of Representative Reginald L. Jones, Jr. Section 53-202k " 'requires a mandatory five year sentence . . . *in addition and consecutive to any imprisonment for the [underlying] felony.*' " (Emphasis added.) Id., quoting 36 S. Proc., Pt. 14, 1993 Sess., p. 4956, remarks of Senator Alvin W. Penn. In the absence of anything in the legislative history or § 53-202k to the contrary, "we afford substantial weight to [the legislators' characterizations of the statute's] objective and effect. See, e.g., *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 40–41, 699 A.2d 101 (1997) . . . ." (Citations omitted.) *Oxford Tire Supply, Inc.* v. *Commissioner of Revenue Services*, 253 Conn. 683, 692–93, 755 A.2d 850 (2000).

On the basis of the plain language of § 53-202k, its legislative history, and prior court decisions interpreting the statute, we conclude that the application of § 53-202k's sentence enhancement to manslaughter in the first degree with a firearm, a class B felony, does not violate double jeopardy.

B

The defendant next claims that the trial court improperly applied § 53-202k's mandatory five year sentence enhancement to both the suspended and nonsuspended portions of his split sentence. The trial court sentenced the defendant to thirty years incarceration, suspended after fourteen years, and five years probation for the conviction of first degree manslaughter with a firearm.

Thereafter, the trial court found that the defendant had used a firearm in the commission of a class B felony and, pursuant to § 53-202k, added a five year consecutive sentence. The trial court applied the sentence enhancement to both the suspended and nonsuspended portions of the defendant's sentence, thereby sentencing him to a total effective sentence of thirty-five years incarceration, suspended after nineteen years, and five years probation.

The defendant claims that, in applying the sentence enhancement provision of § 53-202k to both portions of the split sentence, the trial court improperly applied the sentence enhancement twice. He further contends that such an application could exceed the maximum sentence permissible under General Statutes § 53a-35a[14] for the conviction of manslaughter in the first degree with a firearm. The defendant maintains that the § 53-202k sentence enhancement should be applied solely to the nonsuspended portion of a split sentence, thereby maintaining the maximum statutory duration of the sentence for his underlying conviction. That is, the defendant contends that the trial court should have maintained his total effective sentence at thirty years incarceration, suspended after nineteen years, rather than thirty-five years incarceration, suspended after nineteen years. The state claims that such an application of § 53-202k would defeat the purpose of the sentence enhancement provision because the five year

[14] General Statutes § 53a-35a provides in relevant part: "For any felony committed on or after July 1, 1981, the sentence of imprisonment shall be a definite sentence and the term shall be fixed by the court as follows . . . (4) for the class B felony of manslaughter in the first degree with a firearm under section 53a-55a, a term not less than five years nor more than forty years; (5) for a class B felony other than manslaughter in the first degree with a firearm under section 53a-55a, a term not less than one year nor more than twenty years, except that for a conviction under section 53a-59(a)(1), 53a-59a, 53a-70a, 53a-94a, 53a-101(a)(1) or 53a-134(a)(2), the term shall be not less than five years nor more than twenty years . . . ."

enhancement would collapse into the suspended portion of the defendant's sentence. Thus, the state claims, such an application of § 53-202k would not only reduce the effective sentence for the underlying conviction, but also, it would frustrate the legislature's intent to enhance the sentences to which § 53-202k applies. We agree with the state.

As we noted previously, § 53-202k is a sentence enhancement statute. *State* v. *Dash*, supra, 242 Conn. 150. The intent of the legislature in enacting this statute was "to establish an enhanced penalty for persons who commit a class A, B or C felony with a firearm." Id., 147. The statute expressly provides that a person who commits a class A, B or C felony with a firearm "shall be imprisoned for a term of five years, which *shall not be suspended or reduced* and *shall be in addition and consecutive to any term of imprisonment* imposed for conviction of such felony." (Emphasis added.) General Statutes § 53-202k. The plain language of the statute indicates that the legislature intended to impose a five year sentence in addition to any sentence for the underlying felony conviction, regardless of the length of the sentence for the underlying conviction. Indeed, the legislature's use of the word "any" to modify the phrase "terms of imprisonment" indicates that the legislature intended to enhance any term permissible under the statutory sentencing scheme. Moreover, it is important to note that the legislature sets the statutory sentencing maximums and is able to provide for limitations on § 53-202k's application in instances in which the cumulative sentence of the term for the underlying conviction and the five year enhancement would exceed the statutory maximum for the underlying felony. The fact that the legislature has not provided for such limitations on § 53-202k's application indicates its intent that § 53-202k be applied to enhance the duration of the underlying sentences to which it is applied.

Section 53-202k's legislative history further supports the conclusion that it applies to a split sentence as the trial court applied it herein. "[Section] 53-202k was intended, '[to add] five years to the end of *whatever other* sentence [a defendant is] receiving as a consequence of these acts. . . . So, it is *five additional years on top of the other sentence.*' " (Emphasis altered.) *State* v. *Dash,* supra, 242 Conn. 149, quoting 36 H.R. Proc., supra, pp. 11,727–28, remarks of Representative Lawlor. Similarly, § 53-202k " 'requires a mandatory five year sentence . . . in addition *and* consecutive to *any* imprisonment for the [underlying] felony.' " (Emphasis added.) Id., quoting 36 S. Proc., supra, p. 4956, remarks of Senator Penn. These statements indicate that the enhancement provision of § 53-202k applies to any term of imprisonment, including the maximum sentence for the underlying felony. Moreover, these statements also confirm that the legislature intended that the application of § 53-202k not only be "consecutive" to, but also be "in addition" to the sentence for the underlying felony.

If, as the defendant contends, the five year sentence enhancement were applied solely to the nonsuspended portion of a split sentence, the enhancement would not affect the suspended portion of the underlying sentence. Thus, under that interpretation, while the defendant's sentence under the § 53-202k enhancement would be consecutive to the underlying sentence, it would not be in addition to that sentence. In contrast, when the sentence enhancement is added to both the suspended and nonsuspended portions of a split sentence, as the state contends, the aggregate term includes the § 53-202k enhancement in addition and consecutive to both the executed and suspended portions of the underlying sentence. On the basis of the language of § 53-202k and its legislative history, we conclude that

the trial court properly applied § 53-202k's sentence enhancement to the defendant's split sentence.[15]

## III

The defendant next claims that the state failed to adduce evidence sufficient to warrant a conviction for manslaughter in the first degree with a firearm.[16] We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Wilcox*, 254 Conn. 441, 463, 758 A.2d 824 (2000). "In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Schiappa*, 248 Conn. 132, 177, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). "In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier

[15] The trial court relied on a decision of the Appellate Court, *State* v. *Williams*, 48 Conn. App. 361, 365–66 n.4, 709 A.2d 43, cert. denied, 245 Conn. 907, 718 A.2d 16 (1998), in applying § 53-202k to the defendant's split sentence. In claiming that this court should reverse the trial court, the defendant also contends that we should overrule the portion of *Williams* on which the trial court relied. We affirm the judgment of the trial court, but articulate no conclusion regarding the dicta in *Williams*. Id.

[16] At the conclusion of the state's case, the trial court denied the defendant's motion for judgment of acquittal on the manslaughter charge.

may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Wilcox,* supra, 463.

Additionally, "[a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's] verdict of guilty." (Internal quotation marks omitted.) Id., 463–64.

In the present case, the defendant claims that the evidence was sufficient to support only a conviction for criminally negligent homicide, not, as the trial court concluded, manslaughter in the first degree with a firearm.[17] Essentially, the defendant contends that the incident in question was an accident, and that the state failed to adduce evidence proving that his culpable mental state had risen beyond the level required for a finding of mere negligence to the level of aggravated recklessness required for a finding of first degree manslaughter. We disagree.

"To obtain a [manslaughter] conviction under [§] 53a-55 (a) (3) . . . the state must prove that the defendant (1) engaged in conduct which creates a risk of death, (2) in so doing, he acted recklessly (3) under circumstances evincing an extreme indifference to human life and (4) that his conduct caused the death . . . of another per-

---

[17] At the conclusion of the evidence, both parties agreed to allow the court to consider the two lesser included offenses of first degree manslaughter, second degree manslaughter and negligent homicide.

son." *State* v. *Shine*, supra, 193 Conn. 643. In *State* v. *Bunkley*, supra, 202 Conn. 643, this court concluded that the difference between the mental states required for criminal negligence and recklessness is clear. "[C]riminal negligence concerns a [defendant's] failure to realize [a] risk." Id. In denying the defendant's motion to dismiss the manslaughter charge at the conclusion of the trial, after the court previously had denied the defendant's motion for judgment of acquittal at the conclusion of the state's case, the trial court recognized that recklessness, pursuant to General Statutes § 53a-3 (13),[18] requires a showing that the defendant was "aware of and consciously disregard[ed] a substantial and unjustifiable risk . . . of such nature and degree that disregarding it constitute[d] a gross deviation from the standard of conduct that a reasonable person would [have observed] in the situation . . . ." See *State* v. *Spates*, supra, 176 Conn. 236–37 (concluding that "extreme indifference" more than "mere carelessness" or "ordinary recklessness").

"We have long recognized that a defendant's state of mind can usually be proven only by circumstantial evidence. . . . Recognizing the difficulty in proving by direct evidence that an accused subjectively realized

---

[18] General Statutes § 53a-3 provides in relevant part: "Except where different meanings are expressly specified, the following terms have the following meanings when used in this title . . .

"(13) A person acts 'recklessly' with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregarding it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation;

"(14) A person acts with 'criminal negligence' with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation . . . ."

and chose to ignore a substantial risk . . . we have long held that the state of mind amounting to recklessness . . . may be inferred from conduct. . . . It requires little extension of this principle to hold that such relevant conduct may constitute a course of behavior rather than one specific act." (Citations omitted; internal quotation marks omitted.) *State* v. *Salz*, 226 Conn. 20, 32–33, 627 A.2d 862 (1993). Thus, in *State* v. *Bunkley*, supra, 202 Conn. 643, this court affirmed a manslaughter conviction under § 53a-55 (a) (3) where the defendant, in the course of evading police pursuit, had driven at excessive speeds on the wrong side of the road and had struck the victims' car head on, resulting in the victims' deaths.

Applying these principles to the present case, we conclude that the evidence was sufficient to support the trial court's verdict. As we noted previously, it is undisputed that the defendant was hunting on private land without permission, on a Sunday, during closed season. In addition, he was hunting without the required blaze orange outerwear. In fact, the defendant told police that he specifically had not worn the orange outerwear in order to avoid being caught for hunting illegally. The defendant was not licensed to hunt, nor did he have a permit to hunt deer. Moreover, the defendant was hunting in an area thick with autumn foliage, fully aware of the fact that he is color-blind.

At the time of the incident, the defendant shot his long-range rifle without a proper sightline or a proper backstop toward a wooded area that he knew or should have known was frequented by people. Upon realizing that he may have shot a person, the defendant did not rush to the victim's aid. Instead, he ran home. Indeed, he returned home twice before his stepfather called the Coventry police. At no time during these trips did the defendant administer medical aid to the victim. In light of this evidence, we conclude that the trial court reason-

ably found, beyond a reasonable doubt, that the defendant was guilty of the crime of first degree manslaughter with a firearm.

The judgment is affirmed.

In this opinion the other justices concurred.