STATE OF CONNECTICUT *v.* THOMAS H.[1]
(AC 26693)

McLachlan, Lavine and Peters, Js.

---

[1] In accordance with our policy of protecting the privacy interests of victims of sexual abuse, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued February 20—officially released May 22, 2007

*Joaquina Borges King*, special public defender, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara Eschuk*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal, the defendant challenges his conviction for his physical and sexual abuse of his minor daughter. His principal claims of error contest the sufficiency of the evidence and the validity of the trial court's evidentiary rulings under General Statutes § 54-86f, the rape shield statute. We

conclude that each of his claims is untenable and affirm the judgment of the trial court.

In a four count amended substitute information, the state charged the defendant, Thomas H., with the crimes of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B), risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and risk of injury to a child in violation of General Statutes § 53-21 (a) (1). The alleged victim was his daughter, and the alleged time of abuse was the period between August, 1997, and May, 2000, when she was between eight and twelve years of age. The defendant entered pleas of not guilty on each count. After a jury trial, the defendant was convicted as charged and sentenced to the custody of the commissioner of correction for a total effective term of forty-five years, execution suspended after thirty-five years and five years probation. The defendant has appealed.

By way of background, the jury reasonably could have found the following facts, which were undisputed. Between August, 1997, and May, 2000, the defendant and his four daughters lived together in a condominium. The victim and her twin sister were the defendant's oldest children. The children's mother had left the family shortly after the birth of the youngest daughter.

As a result of complaints by neighbors about the squalid physical condition of the defendant's condominium, the children came to live with their grandmother in May, 2000.[2] In August of that year, because the grandmother found herself unable to continue to care for them, she relinquished custody to the commissioner of the department of children and families. The department placed the victim in a series of foster homes and

---

[2] The defendant subsequently agreed to the termination of his parental rights with respect to all four children.

ultimately in a so-called safe house. During this time, the victim was treated by two therapists, Susan Gagnon and Noel Federle. The victim told each of these two women and her grandmother that the defendant had assaulted her both physically and sexually. Further facts will be described as they become relevant.

## I

## SUFFICIENCY OF THE EVIDENCE

Because it would be dispositive of the charges against him if it were accepted, we consider first the defendant's contention that the state adduced insufficient evidence to support his conviction. At trial, the defendant moved for judgment of acquittal on all counts at the end of the state's case and at the announcement of the jury's verdict of guilty. His central claim is that the testimony of the victim was too imprecise to support his conviction. We are unpersuaded.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and

logical." (Citations omitted; internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 566–67, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002).

The victim, who was fourteen at the time of trial, was the crucial witness against the defendant on each of the charges of which he was convicted. During trial, the defendant introduced the victim's prior statement to the police in which she had stated that the defendant repeatedly fondled her body when she was a small child. The victim also testified at trial about the defendant's physical and sexual assaults as she became older. Concededly, the victim's credibility was an issue for the jury to decide.

The defendant challenges his conviction on the grounds that (1) the time frame of the defendant's alleged misconduct was not sufficiently established,[3] (2) the victim's conduct during the alleged time frame did not manifest any outward discomfort on her part and (3) the victim denied having been assaulted when the defendant took her to be examined by a physician because of a bloodstain on her underwear. We are not persuaded. The jury reasonably might have found that the victim was too young to describe her early abuse with precision and too overwhelmed to complain of the defendant's conduct until she was in a safe environment outside his control. See *State* v. *Saraceno*, 15 Conn. App. 222, 237, 545 A.2d 1116 ("[t]his court will not impose a degree of certitude as to date, time and place that will render prosecutions of those who sexually

---

[3] The victim testified with precision that the final sexual assault occurred immediately after a condominium association meeting concerning the deplorable physical condition of the defendant's condominium. The proximity of that event to the children's removal to the home of their grandmother made it easy to verify the victim's report of the timing of that assault. In light of the accuracy of that report, the jury reasonably might have credited the victim's testimony about when the defendant's other assaults occurred.

abuse children impossible"), cert. denied, 209 Conn. 823, 824, 552 A.2d 431, 432 (1988). In context, the evidence adduced by the state was sufficient to sustain the jury's verdict.[4]

## II

## EVIDENTIARY RULINGS BY THE TRIAL COURT

The defendant claims that he is entitled to a new trial because the trial court made two improper evidentiary rulings. One of these rulings concerns the court's limitation of the defendant's cross-examination of the victim with respect to his prior uncharged misconduct. The other concerns the court's ruling permitting the victim to give a written answer to one question during her direct examination by the state. The defendant maintains that these rulings constituted an abuse of the trial court's discretion under § 54-86f.[5] The defendant agrees, however, that, as with other evidentiary claims of error, our standard of review is whether the court's ruling was an abuse of the court's discretion. See *State* v. *Smith*, 275 Conn. 205, 219, 881 A.2d 160 (2005).

The defendant's first evidentiary claim arises out of the victim's testimony about a conversation with her grandmother in which the victim alluded to an event of sexual abuse by the defendant on the victim and on her cousin by her uncle. Throughout a good deal of the trial, the evidence was unclear whether the victim was describing a dream or her memory of an actual occurrence in 1992. The defendant complains that he was not permitted to test the victim's credibility by questioning her about all the circumstances of these sexual

---

[4] Her credibility was enhanced by evidence that her testimony of the misconduct of her uncle was confirmed by his plea of guilty for assaulting his daughter, the victim's cousin.

[5] Although the defendant also alludes to a possible violation of his state constitutional rights, he has failed to provide any support for such an argument in his brief.

assaults, which, if they occurred, substantially preceded the time frame of the present information.

On the record in this case, we need not decide the propriety of the trial court's initial ruling precluding some of the defendant's questioning of the victim. As the state points out, the defendant himself subsequently called both the grandmother and the victim to testify in his defense. Their further testimony not only supported the accuracy of the victim's description of her recollection of what she told her grandmother,[6] but gave the defendant a full opportunity to test her credibility further.[7] The defendant has failed to identify any relevant evidence on this issue that he ultimately was unable to elicit. We conclude, therefore, that his evidentiary claim cannot be sustained.

The defendant's second evidentiary claim is that the trial court abused its discretion and deprived him of his right of confrontation by permitting the victim to provide a written answer to one question. During the state's direct examination of the victim, she described the circumstances of one of the defendant's sexual assaults on her. She testified that, angered by his neighbors' criticism of his maintenance of his condominium unit, the defendant had ordered her to get into his bed with him. The prosecutor then asked "What happened

---

[6] In response to questioning on direct examination by the defendant, the grandmother testified that the victim had told her that her father and her uncle had taken the victim and her cousin into a wooded area where they had sexually assaulted them. She further testified that the uncle had been convicted of assault in the second degree in connection with this incident.

[7] In response to direct examination by the defendant, the victim denied any confusion about her testimony about the defendant's misconduct during the period covered by the information and her conversation with her grandmother about the earlier sexual encounters involving her father and her uncle. On cross-examination, she amplified, characterizing her conversation about this earlier incident as, "I had a dream and I went and told [my grandmother]." She further testified that "the dream" was "completely separate" from what her father had done to her while she and her sisters were living with him at the condominium.

then?" Although the court urged the victim to answer this question, she was unwilling to do so. The court then allowed her to describe, in writing, the details of his assault upon her and she did so. Her handwritten reply became an exhibit in this case.

At trial, the defendant's objection was limited to his expressed concern that the victim should not be allowed to write *additional* responses to counsel's questions. The record discloses no further written answers by the victim to any questions asked by either counsel at any time during this lengthy trial.

On appeal, the defendant argues, for the first time, that the single written reply permitted by the trial court entitles him to a new trial because the court's ruling violated his federal constitutional right to confront the witnesses against him. We agree with the state that it is difficult to visualize a confrontation claim under the circumstances of this case, in which the underlying colloquy and the writing of the response occurred in the presence of the defendant and in which the opportunity to cross-examine the victim as to this written response was provided. Furthermore, under our case law, the defendant waived this claim by raising a different objection at trial. See *State* v. *Coltherst*, 263 Conn. 478, 510, 820 A.2d 1024 (2003).

In sum, looking at the record as a whole, we are persuaded that the defendant had the requisite opportunity to bring to the jury's attention all the issues that he sought to raise about the victim's credibility. He was not prejudiced by the court's ruling permitting her to respond to one highly sensitive question in writing. We conclude, therefore, that the trial court's evidentiary rulings in this case complied fully with the governing statutory and constitutional standards.

## III

## PROSECUTORIAL IMPROPRIETY

The defendant's third argument for reversal is his claim that the prosecutor, in her closing argument, engaged in prosecutorial impropriety[8] that deprived the defendant of his constitutional rights to due process and a fair trial.[9] He maintains that it was improper for the prosecutor to refer to the victim's recollection of the 1992 incident as a "flashback" because the charges against him were limited to events taking place between 1997 and 2000. Although the defendant did not object to the prosecutor's comment when it was made, and did not ask the court for a corrective instruction, he now maintains that the prosecutor's comment was so prejudicial that he is entitled to a new trial. We are not persuaded.

The principles that govern our review of claims of prosecutorial impropriety are well established. This review involves a two step analytical process. "The two steps are separate and distinct: (1) whether [an impropriety] occurred in the first instance; and (2) whether that [impropriety] deprived a defendant of his due process right to a fair trial. . . . In determining whether prosecutorial [impropriety] was so serious as to amount to a denial of due process, this court . . . has focused on several factors. Among them are the extent to which the [impropriety] was invited by defense conduct or argument . . . the severity of the [impropriety] . . . the frequency of the [impropriety] . . . the centrality of the [impropriety] to the critical

---

[8] In *State* v. *Fauci*, 282 Conn. 23, 26 n.2, 917 A.2d 978 (2007), our Supreme Court determined that "the term 'prosecutorial impropriety' . . . is more appropriate than the traditional term of 'prosecutorial misconduct' . . . ." (Citation omitted.)

[9] Although the defendant cites article first, § 8, of the constitution of Connecticut in support of this claim, he provides no reasoned discussion of its applicability. Accordingly, we decline to review this claim.

issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . . Although unpreserved claims of prosecutorial [impropreity] are reviewable under [*State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)] . . . we continue to adhere to the well established maxim that defense counsel's failure to object to the prosecutor's argument when it was made suggests that defense counsel did not believe that it was unfair in light of the record of the case at the time. . . . Accordingly, we emphasize that counsel's failure to object at trial, while not by itself fatal to a defendant's claim, frequently will indicate on appellate review that the challenged comments do not rise to the magnitude of constitutional error." (Citations omitted; internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 798–800, 911 A.2d 1099 (2007).

It is understandable why the defendant did not object to the prosecutor's comment at trial in this case because the prosecutor previously had asked for guidance from the court about how she should address the ambiguity in the record about whether the victim's conversation with her grandmother concerned a dream or an actual event. The defendant did not object to the court's suggestion to refer to the dream as a flashback, perhaps because the court coupled it with its representation that, in its charge to the jurors, it would "make it clear to them that any finding of guilty has to be premised on events that took place between August, 1997, and May, 2000." The court gave such a charge.

In the defendant's reply brief, he disputes the accuracy of the state's description of what transpired at trial and maintains that the prosecutor's argument in fact contravened the instructions of the court. He has, however, failed to support this argument with references to the relevant transcript pages.

On this state of the record, we are not persuaded that the single comment by the prosecutor can properly be characterized as an impropriety. Even if it were, we are persuaded that it was not prejudicial.

The judgment is affirmed.

In this opinion the other judges concurred.